**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TOCARRA MCMULLIN, NEXT OF
FRIEND TO T. M., a minor,

      Plaintiff,

v.

WAYNE COUNTY, d/b/a Wayne County
Juvenile Detention Center, a political subdivision
of the State of Michigan; WARREN EVANS, in
his individual and official capacity as Wayne
County Executive; ASSAD TURFE, Deputy
Wayne County Executive, in his individual
capacity; MELISSA FERNANDEZ, in her
individual capacity as Division Director of
Wayne County Juvenile and Youth Services and
Chief Administrator of Wayne County Juvenile
Detention Center; MARK ROLAND, in his
individual capacity as Deputy Director of
Administration for the Wayne County  Juvenile
Detention Facility; BRANDON BARBER, in his
individual capacity as Facility Director of the
Wayne County Juvenile Detention Facility; DOE
1, in her capacity as Operations Director of the
JDF; KIRPHEOUS STEWART, in his individual
capacity as the Wayne County Juvenile Detention
Center Deputy Director of Operations; JDF
STAFF MEMBER 1, in his individual capacity;
JDF STAFF MEMBER 2, in his individual
capacity; JDF STAFF MEMBER 3, in his
individual capacity; JDF STAFF MEMBER 5, in
his individual capacity; JDF SUPERVISOR 1, in
his individual capacity; JDF SUPERVISOR 2, in
his individual capacity; DOE 2 (JDF Juvenile
Detention Specialist) in his or her individual
capacity; DOE 3 (JDF Team Leader/Supervisor),
in his/her individual capacity; ELIZABETH

Case No.: 24-cv-11801

Judge Matthew F. Leitman

HERTEL, in her individual capacity as the Director of the Michigan Department of Health and Human Services; DEMETRUIS STARLING, in his individual capacity as Senior Deputy Director of the Department of Health and Human Services; STEVE YAGER, in his individual capacity as the Executive Director of the Division of Child Welfare Licensing of the Michigan Department of Health and Human Services; ASHLEIGH BROTHERSON, in her individual capacity as the Division Director of Child Welfare Licensing for the Michigan Department of Health and Human Services; VIVIAN MALLECK, in her individual capacity as a Licensing Consultant for the Michigan Department of Health and Human Services; CHRISTOPHER BARR, in his individual capacity as a Licensing Consultant for the Michigan Department of Health and Human Services.

Jointly and severally,

      Defendants.

## DEFENDANTS WAYNE COUNTY, WARREN EVANS, ASSAD TURFE, MELISSA FERNANDEZ, MARK ROLAND, BRANDON BARBER, AND KIRPHEOUS STEWART'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND JURY DEMAND

Defendants WAYNE COUNTY, WARREN EVANS, in his individual and official capacity as Wayne County Executive; ASSAD TURFE, Deputy Wayne County Executive, in his individual capacity; MELISSA FERNANDEZ, in her individual capacity as Division Director of Wayne County Juvenile and Youth Services and Chief Administrator of Wayne County Juvenile Detention Center;

2

MARK ROLAND, in his individual capacity as former Deputy Director of Administration for Wayne County Juvenile Detention Facility, BRANDON BARBER, in his individual capacity as Facility Director of the Wayne County Juvenile Detention Facility; and KIRPHEOUS STEWART, in his individual capacity as the Wayne County Juvenile Detention Center Deputy Director of Operations, (collectively "Wayne County Defendants" or "Defendants")[1], by and through their counsel, The Miller Law Firm P.C., state as follows for their Answer and Defenses to Plaintiff's Complaint and Jury Demand as follows:

In answering allegations made against the Wayne County Defendants, they answer the allegations only to the extent that the allegations are directed to the Wayne County Defendants, and they do not answer on behalf of any other Defendant. Any and all allegations in Plaintiff's Complaint, including but not limited to those contained in any introductory clauses, titles, subtitles, paragraphs or subparagraphs, footnotes or wherefore clauses, which are not specifically admitted, are denied.

## I.

## INTRODUCTORY STATEMENT

Defendants admit that Plaintiff purports to assert claims against them.

---

[1] For purposes of this Answer, Defendants are using the titles contained in Plaintiff's caption and body of the Complaint. However, Defendants have not yet independently confirmed that these titles were either correct during the relevant time period of this action and/or that they remain correct today.

3

Defendants deny that they have committed any act or omission that would subject them to liability.

1.      This a case brought by Plaintiff Tocarra McMullin, mother and legal guardian and as Next Friend to T.M., a twelve-year-old minor, arising out of the unconstitutionally deplorable and inhumane conditions that T.M. was subjected to while detained within the Wayne County Juvenile Detention Facility/William Dickerson Juvenile Detention Facility (collectively referred to as JDF)[2]. T.M. was detained while he was 11 and 12 years old, leading to him being viciously beaten and anally gang raped by 5 JDF residents on March 14th and 15th, 2023.

**ANSWER:   The allegations in Paragraph 1 contain Plaintiff's characterization of her action and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations contained in Paragraph 1 as stated.**

2.      It is clearly established as a matter of constitutional law that detention officials must ensure that detainees receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the youthful detainees. *Farmer v. Brennan*, 511 U.S. 825, 832–33, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994)(citations omitted)(Holding that the Eighth Amendment

---

[2] The Wayne County Juvenile Detention Facility moved from downtown Detroit to the William Dickerson Facility located in Hamtramck in October of 2023.

"imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates[.") This clearly established constitutional duty includes "a duty…to protect prisoners from violence at the hands of other prisoners." *Id.* (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (CA1), cert. denied, 488 U.S. 823 (1988) and *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

**ANSWER:  The allegations in Paragraph 2 state legal conclusions to which no answer is required. To the extent an answer may be required, the allegations in Paragraph 2 are denied as stated. Defendants further state that the allegations in Paragraph 2 purport to quote case law and Defendants state that these cases, and any other cases cited and/or quoted by Plaintiff, speak for themselves.**

3.      Thus, at the time of the events giving rise to this action, all reasonable officials in Defendants' position would understand, and the Defendants in this action did in fact understand that their actions as alleged in this complaint violated Plaintiff's clearly established constitutional rights.

**ANSWER: The allegations in Paragraph 3 are not solely directed to Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, the allegations in Paragraph 3 are denied as stated.**

5

**Defendants further deny that they have committed any act or omission that would subject them to liability.**

4. The Wayne County Juvenile and Youth Services Department administers the County's juvenile justice system of care from prevention to adjudication of juveniles and includes community re-integration of returning juveniles. The Department's responsibilities include detention custody and care, residential treatment, and community-based services for Wayne County youth who have had formal contact with the Family Division of the Wayne County Third Circuit Court.

**ANSWER: The allegations in Paragraph 4 state legal conclusions to which no answer is required. To the extent an answer may be required, the allegations in Paragraph 4 are admitted. Defendants further deny that they have committed any act or omission that would subject them to liability.**

5. The Wayne County Defendants, sued in their individual capacities for actions taken under color of law, are responsible for the operations of the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility.

**ANSWER: The allegations in Paragraph 5 state legal conclusions to which no answer is required. To the extent an answer may be required, the allegations in**

6

**Paragraph 5 are denied as stated. Defendants further deny that they have committed any act or omission that would subject them to liability.**

6. The MDHHS Defendants, sued in their individual capacities for actions taken under color of law, are charged with overseeing the JDF, licensing the facility, and monitoring the facility to ensure that the JDF provides proper care, education, health, and protection to the youths housed in it.

**ANSWER: The allegations contained in Paragraph 6 are not directed to Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 6 as stated. Defendants further deny that they have committed any act or omission that would subject them to liability.**

7. At all times relevant hereto, the MDHHS Defendants had actual and/or constructive knowledge of the conditions inside the JDF, as well as the power, authority, and resources to have access to the JDF and to oversee it to ensure that it provides proper care to the youthful detainees.

**ANSWER: The allegations contained in Paragraph 7 are not directed to Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 7 as stated.**

8. During T.M.'s detention at the Detroit JDF from February of 2022 to

March of 2022, from April of 2022 to July of 2022, and from August of 2022 to October of 2022, and during his detention at the William Dickerson JDF from October of 2022 to March 16th, 2023, the conditions of the JDF were deplorable such that T.M. and other youth were denied:

> a.  Showers and basic hygiene;
> b.  Adequate change of clothes;
> c.  Recreational time;
> d.  Ability to leave their rooms for 22 to 24 hours a day;
> e.  Educational programming;
> f.  Necessary medication; and
> g.  Sufficient food and sustenance.[3]

**ANSWER:  The allegations in Paragraph 8, including the subparagraphs and footnote 2, state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants only admit that: T.M. was in detention**

---

[3] On September 29, 2023, the MDHHS issued a Special Investigation Report (SIR) - No. 2023C0000340 - placing the JDF on a provisional license, MCL section 722.117(a), finding that every possible form of neglect and inhumane conditions exists for the JDF youth, including, but not limited to:

1.  A failure to provide showers and basic hygiene;

2.  A failure to provide an adequate change of clothes;

3.  A failure to provide recreational time;

4.  A failure to provide educational programming;

5.  A failure to provide necessary medication;

6.  A failure to provide sufficient food and sustenance.

(See September 29, 2023, SIR, No. 2023C0000340, attached hereto as Exhibit 1)

**but the exact dates are not currently known, and the remaining allegations in Paragraph 8 are denied as stated. Defendants further states the Special Investigation Report (SIR) – No. 2023C0000340, purportedly attached as Exhibit 1 to the Complaint, speaks for itself and Defendants deny Plaintiff's characterization of the same. Defendants further state that, unless specifically admitted herein, all the other allegations contained in Paragraph 8, including subparagraphs and footnote 2, are denied.**

9. During T.M.'s detention within the JDF, Defendants had a policy, custom, and practice of:

> a. While at the JDF in Detroit facility, locking youthful detainees in their rooms for 22 to 24 hours a day;
> b. While at the JDF Dickerson facility, allowing youthful detainees to be out of their rooms unsupervised, outside the line of vision of JDF staff;
> c. Maintaining an inadequate and dangerous staff to resident ratio in violation of the Prison Rape Elimination Act (PREA);
> d. Hiring and retaining staff who have a history of child abuse and/or neglect;
> e. Directing JDF staff not to intervene when youthful detainees are being sexually and/or physically assaulted;
> f. Not maintaining 15-minute checks on the detainees;
> g. Not securing vacant rooms;
> h. Directing supervision to remain in the Unit Control Room which does not have direct visual contact with all rooms in a housing Unit;
> i. Placing younger juveniles, including Plaintiff, in confinement with older detainees; and
> j. Placing juveniles, including Plaintiff, in confinement with detainees who have a history of sexual misconduct.

**ANSWER:** **The allegations in Paragraph 9, including subparagraphs, are not solely directed to Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, the allegations in Paragraph 9, including all subparagraphs, are denied as stated.**

10.     Defendants, including the municipal defendant Wayne County and the State Defendant MDHHS, were on notice that detaining youth without regard to their vulnerable status subjects youthful detainees to heightened and substantial risk of harm, including but not limited to, physical and sexual violence and abuse and sexual harassment by other youthful detainees, but did nothing to abate the risk and in fact disregarded the risk with deliberate indifference to Plaintiff's health and welfare.

**ANSWER:** **The allegations contained in Paragraph 10 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 10 as stated. Defendants further answer that "the State Defendant MDHSS" is not a named Defendant.**

11.     Defendants' policies, customs, and practices as set forth above and below constituted deliberate indifference to Plaintiff's health, wellbeing and safety and were implemented with the express intent to punish T.M. and/or created detention conditions not rationally related to a legitimate governmental objective, and/or constituted punishment that was excessive in relation to that purpose.

**ANSWER: The allegations contained in Paragraph 11 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 11 as stated.**

12. Defendants' policies, customs, and practices and their actions and inactions, created a sexually hostile detention environment where the predictable but preventable happened when on March 14th and 15th, 2023T.M. was brutally beaten and anally gang raped by five JDF residents while JDF staff did nothing to stop it.

**ANSWER: The allegations contained in Paragraph 12 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 12 as stated.**

13. On January 3, 2024, MDHHS issued a report identified as SIR- No. 2023C0000325, investigating the circumstances of T.M.'s March 2023 physical and sexual assault, and finding that the Wayne County Defendants engaged in deliberately indifferent conduct and maintained practices, policies and customs that violated numerous rules promulgated by the Department of Consumer and Industry Service Division of Child Welfare Licensing for Juvenile Facilities, and set forth in the Juvenile Justice Residential Policy Manual including:

   a. CCI Rule 400.4126- Sufficient Staff;
   b. CCI Rule 400.4127- Staff to Resident Ratio;

11

c. CCI Rule 400.4112 - Criminal history check, subject to requirements, staff qualifications; and

d. CCI Rule 400.4158- Intervention Standards and Prohibitions. (See January 3, 2024, SIR 2023C0000325, attached hereto as Exhibit 2)

**ANSWER: The allegations in Paragraph 13, including subparagraphs, state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 13, including subparagraphs, as stated. Defendants further state that SIR 2023C0000325, purportedly attached as Exhibit 2, the Rules promulgated by the Department of Consumer and Industry Service Division of Child Welfare Licensing for Juvenile Facilities mentioned in Paragraph 13 (a)-(d) and Juvenile Justice Residential Policy Manual all speak for themselves. Defendants further deny any attempt by Plaintiff to characterize or interpret the same.**

14. Defendants' policies, customs, and practices and their actions and inactions constitute deliberate indifference to the welfare, health and safety of T.M. and a violation of his constitutional rights.

**ANSWER: The allegations contained in Paragraph 14 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 14 as stated.**

12

15. At all times relevant hereto, all Defendants were acting under color of law, and, in doing so, deprived T. M. of his rights under the 8th Amendment and 14th Amendment of the United States Constitution.

**ANSWER: The allegations contained in Paragraph 15 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 15 as stated.**

16. As a result of Defendants' policies, customs, and practices, actions and inactions, gross negligence, and deliberate indifference to T. M.'s health and safety, T.M. has suffered irreparable harm, including but not limited to physical injuries, sexual violence and abuse, including anal rape, severe emotional distress and mental trauma, degrading treatment, lengthened periods of detention, solitary confinement and deprivation of educational, medical and rehabilitative services.

**ANSWER: The allegations contained in Paragraph 16 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 16 as stated.**

17. After T.M.'s physical and sexual assaults, Wayne County Executive, Warren Evans, issued a Public Emergency Order regarding the conditions at JDF on March 22, 2023, stating:

"The situation has become untenable for nearly 140 youth that are currently residing there," Evans said in his remarks. "Extraordinary action has become necessary, which is why today I'm calling for a public health state emergency.

"This order, under the powers of the county health officer, will allow us to establish an incident command structure reporting directly to me, which will expedite action to adequately staff and provide therapeutic services in the facility. But in the end, the most important action needed to address the situation is for the state to provide long-term residential beds."

**ANSWER: The allegations in Paragraph 17 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants admit only that Wayne County Executive Warran Evans issued a Public Emergency Order, which Public Emergency Order speaks for itself. Defendants deny all of the remaining allegations in Paragraph 17, including Plaintiff's attempt to characterize or interpret the Public Emergency Order.**

18. It is unconscionable that the conditions that existed for T.M. at the JDF continued to exist after his release and to date.

**ANSWER: The allegations in Paragraph 18 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 18 as stated.**

## II.

## JURISDICTION AND VENUE

14

19.     This is a civil action brought pursuant to 42 U.S.C. § 1983, seeking monetary damages against Defendants for violations of his right to be free from cruel and unusual punishment under the 8th Amendment, as applied to Defendants through the Due Process Clause of the 14th Amendment, as well as his due process rights under the 14th Amendment of the United States Constitution.

**ANSWER: The allegations contained in Paragraph 19 are not directed solely at Defendants, contain characterizations of Plaintiff's Complaint, and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 19 as stated. Defendants further state that they deny that they have committed any act or omission that would subject them to liability.**

20.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions, and 28 U.S.C. § 1343(a)(3) and (4), which authorizes federal courts to hear civil rights cases. This Court has personal jurisdiction over the Defendants named herein as public officials of Wayne County, Michigan and the State of Michigan sued in their official and individual capacities for violations of Plaintiffs' statutory and constitutional rights.

**ANSWER: The allegations in Paragraph 20 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in**

**Paragraph 20 as stated.  Defendants deny that they have committed any act or omissions that would subject them to the jurisdiction or venue of this Court or liability in this action. Defendants further state that 28 U.S.C § 1331 and 28 U.S.C. § 1343 speak for themselves.**

21.     Venue is proper in this Court as the events giving rise to the action occurred in the Eastern District of Michigan, Defendants conduct their business across the State, including in the Eastern District of Michigan, and the named Plaintiff resides in Wayne County, Michigan.

**ANSWER: The allegations in Paragraph 21 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 21 as stated. Defendants admit that they conduct business within the Eastern District of Michigan. Defendants deny that they have committed any act or omissions that would subject them to the jurisdiction or venue of this Court or liability in this action. Defendants further state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning where Plaintiff resides and, on this basis, deny them.**

**III.**

**PARTIES**

A.     **Plaintiff**

16

22.     Plaintiff Tocarra McMullin, next of friend of T.M., currently resides in Wayne County, Michigan. At all times relevant to this Complaint, T. M. was in the joint custody of the Wayne County Defendants and MDHHS Defendants.

**ANSWER:   The allegations in Paragraph 22 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 22 as stated. Defendants further state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's residence and on that basis deny them.**

23.     T. M. is a minor, born in June 2010, and at all times relevant to this Complaint, was 11 and 12 years old and in the custody of Defendants within the Wayne County Juvenile Detention Center (JDF) located in Wayne County, Michigan, from February of 2022 to March of 2022, from April of 2022 to July of 2022, and from August of 2022 to March 16, 2023.

**ANSWER: The allegations in Paragraph 23 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 22 as stated, except that T.M. was in detention at JDF but exact dates of detention are not currently known. Defendants further state that they are without knowledge or information sufficient to form a belief as to the truth**

of the allegations regarding Plaintiff's date of birth, his age and/or dates he resided in JDF and on that basis denies these allegations.

### B.      Wayne County Defendants

24.      Defendant WAYNE COUNTY is a political subdivision of the State of Michigan that can be sued in its own name. Wayne County is responsible for all acts of the Wayne County's Executive Office. The Wayne County Executive's Office oversees and administers the Wayne County Juvenile Detention Center (JDF) and is responsible for custody and care and ensuring the protection, safety, health, and well-being of the youth housed in the facility, and had custody over T. M. from February of 2022 to March of 2022, from April of 2022 to July of 2022, and from August of 2022 to March 16, 2023.

**ANSWER:  The allegations in Paragraph 24 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants only admit that Wayne County is a charter county organized pursuant to Michigan law and has all of the powers granted to it under law and pursuant to the Wayne County Charter as amended and that it is a political subdivision of Michigan. As to the remainder of the allegations in Paragraph 24, Defendants deny them as stated. Defendants further state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning Plaintiff's stay at JDF, and on that basis, deny them.**

18

25. Defendant WARREN EVANS is the Executive of Wayne County and is and was at all times relevant hereto, responsible for operating the JDF, making policies and procedures related to the JDF, ensuring that policies and procedures were followed, disciplining employees who violated policies and procedures and rules, maintaining the care and custody of youth confined at the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility. He had and has full power, control and authority to have access to the facility and to oversee the facility in the supervision and control of JDF affairs to ensure that the staff is providing proper care to the juveniles residents in the JDF. He is also responsible for ensuring that the JDF abides by the laws, policies, and regulations of the State of Michigan and of the United States of America. He is being sued in his individual capacity for actions taken under color of law.

**ANSWER:** **The allegations in Paragraph 25 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants only admit that Defendant Warren Evans is the Executive of Wayne County. As to the remainder of the allegations in Paragraph 25, they are denied as stated.**

26. Defendant ASSAD TURFE is the Deputy Wayne County Executive and is and was at all times relevant hereto, responsible for operating the JDF, making policies and procedures related to the JDF, ensuring that policies and procedures were followed, disciplining employees who violated policies and procedures and

19

rules, maintaining the care and custody of juveniles confined at the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility. He had and has full power, control and authority to have access to the facility and to oversee the facility in the supervision and control of JDF affairs to ensure that the staff is providing proper care to the juveniles residents in the JDF. He is also responsible for ensuring that the JDF abides by the laws, policies, and regulations of the State of Michigan and of the United States of America. He is being sued in his individual capacity for actions taken under color of law.

**ANSWER:  The allegations in Paragraph 26 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants only admit that Defendant Assad Turfe acted in the capacity of the Deputy Wayne County Executive. As to the remainder of the allegations in Paragraph 26, they are denied as stated.**

27.    Defendant MELISSA ANN FERNANDEZ, was at all times relevant hereto the Division Director of Wayne County Juvenile and Youth Services and Chief Administrator of JDF, and is and was at all times relevant hereto, responsible for operating the JDF, making policies and procedures related to the JDF, ensuring that policies and procedures were followed, disciplining employees who violated policies and procedures and rules, maintaining the care and custody of juveniles confined at the JDF and ensuring the protection, safety, health, and well-being of the

20

youth housed in the facility. She had and has full power, control and authority to have access to the facility and to oversee the facility in the supervision and control of JDF affairs to ensure that the staff is providing proper care to the juveniles residents in the JDF. She is also responsible for ensuring that the JDF abides by the laws, policies, and regulations of the State of Michigan and of the United States of America. She is being sued in her individual capacity for actions taken under color of law.

**ANSWER:  The allegations in Paragraph 27 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants only admit that Defendant Melissa Ann Fernandez acted in the capacity of  the Division Director of Wayne County Juvenile and Youth Services and Chief Administrator of JDF. As to the remainder of the allegations in Paragraph 27, they are denied as stated.**

28.    Defendant MARK ROLAND was the Deputy Director of Administration for the JDF and was at all times relevant hereto, responsible for operating the JDF, making policies and procedures related to the JDF, ensuring that policies and procedures were followed, disciplining employees who violated policies and procedures and rules, maintaining the care and custody of juveniles confined at the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility. He had full power, control and authority to have access to the

21

facility and to oversee the facility in the supervision and control of JDF affairs to ensure that the staff is providing proper care to the juveniles residents in the JDF. He is also responsible for ensuring that the JDF abides by the laws, policies, and regulations of the State of Michigan and of the United States of America. He is being sued in his individual capacity for actions taken under color of law.

**ANSWER: The allegations in Paragraph 28 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants only admit that Defendant Mark Roland acted in the capacity of the Deputy Director of Administration for JDF. As to the remainder of the allegations in Paragraph 28, they are denied as stated.**

29. Defendant BRANDON BARBER was the Facility Director of the JDF and was at all times relevant hereto, responsible for operating the JDF, making policies and procedures related to the JDF, ensuring that policies and procedures were followed, disciplining employees who violated policies and procedures and rules, maintaining the care and custody of juveniles confined at the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility. He had full power, control and authority to have access to the facility and to oversee the facility in the supervision and control of JDF affairs to ensure that the staff is providing proper care to the juveniles residents in the JDF. He is also responsible for ensuring that the JDF abides by the laws, policies, and regulations of the State of

22

Michigan and of the United States of America. He is being sued in her individual capacity for actions taken under color of law.

**ANSWER: The allegations in Paragraph 29 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants only admit that Defendant Brandon Barber acted in the capacity of the Facility Director of JDF. As to the remainder of the allegations in Paragraph 29, the allegations are denied as stated.**

30. Defendant KIRPHEOUS STEWART, was at all times relevant hereto, the Deputy Director of Operations of the JDF, and responsible for being the liaison between the Child Protective Services and the Bureau of Child Care and oversaw the daily operations of the JDF, including programming, staffing and training the staff and supervisors on how to manage the residents (Michigan State Police Investigative Report, June 13, 2023, Supplemental Date page 2 of 3, attached hereto as Exhibit 3) . He had full power, control and authority to have access to the facility and to oversee the facility in the supervision and control of JDF affairs to ensure that the staff is providing proper care to the juveniles residents in the JDF. He is also responsible for ensuring that the JDF abides by the laws, policies, and regulations of the State of Michigan and of the United States of America. He is being sued in her individual capacity for actions taken under color of law.

**ANSWER: The allegations in Paragraph 30 state legal conclusions to which no**

**answer is required. To the extent an answer may be required, Defendants only admit that Defendant Kirpheous Stewart acted in the capacity of the Deputy Director of Operations for the JDF. Defendants further state that Michigan State Police Investigative Report, June 13, 2023, Supplemental Date page 2 of 3, purportedly attached hereto as Exhibit 3, speaks for itself. As to the remainder of the allegations in Paragraph 30, the allegations are denied as stated.**

31. Defendant DOE 1 was at all times relevant hereto the Operations Director of the JDF and was responsible for overseeing the daily operations of the JDF, including programming, staffing and training the staff and supervisors on how to manage the residents. (Michigan State Police Investigative Report, June 16, 2023, Supplemental Date page 1 of 4, attached hereto as Exhibit 3). She had full power, control and authority to have access to the facility and to oversee the facility in the supervision and control of JDF affairs to ensure that the staff is providing proper care to the juveniles residents in the JDF. She is also responsible for ensuring that the JDF abides by the laws, policies, and regulations of the State of Michigan and of the United States of America. She is being sued in her individual capacity for actions taken under color of law.

**ANSWER: The allegations in Paragraph 31 are addressed to an unnamed Defendant DOE 1, who has not been served with the Complaint. As such,**

24

**Defendants are not required to respond on behalf of this Defendant. Because the DOE 1 Defendant has not been named, Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 and, on that basis, deny all of the allegations in Paragraph 31. Defendants further state that Paragraph 31 states legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny all of the allegations in Paragraph 31 as stated. Defendants further state that Michigan State Police Investigative Report, June 16, 2023, Supplemental Date page 1 of 4, purportedly attached as Exhibit 3 to the Complaint, speaks for itself.**

32.   Defendant, STAFF PERSON 1[4] was at all times relevant hereto an employee of Wayne County and acting within the scope of his employment and responsible for overseeing the youth housed in the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility. He is being sued in his individual capacity for actions taken under color of law.

**ANSWER: The allegations in Paragraph 32, including footnote 3, are addressed to an unnamed Defendant STAFF PERSON 1, who has not been served with the Complaint. As such, Defendants are not required to respond on**

---

[4] The designation of Staff Persons 1 through 5 and Supervisors 1 through 2 is based on how they have been designated by the MDHHS in is Special Investigative Report (SIR) dated January 3, 2024, No. 2023C0000325, attached hereto as Exhibit 2)

**behalf of this Defendant. Because Defendant STAFF PERSON 1 has not been named, Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32, including footnote 3, and, on that basis, deny them. Defendants further state that Paragraph 32 states legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny all of the allegations in Paragraph 32 as stated. Defendants further state that SIR 2023C0000325, purportedly attached as Exhibit 2, speaks for itself.**

33.     Defendant, STAFF PERSON 2 was at all times relevant hereto an employee of Wayne County and acting within the scope of his employment with responsibility for overseeing the youth housed in the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility. He is being sued in his individual capacity for actions taken under color of law.

**<u>ANSWER:</u> The allegations in Paragraph 33 are addressed to an unnamed Defendant STAFF PERSON 2, who has not been served with the Complaint. As such, Defendants are not required to respond on behalf of this Defendant. Because Defendant STAFF PERSON 2 has not been named, Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 and, on that basis, deny them. Defendants further state that Paragraph 33 states legal conclusions to which no**

26

**answer is required. To the extent an answer may be required, Defendants deny all of the allegations in Paragraph 33 as stated. Defendants further state that SIR 2023C0000325, purportedly attached as Exhibit 2, speaks for itself.**

34. Defendant, STAFF PERSON 3 was at all times relevant hereto an employee Wayne County and acting within the scope of his employment with responsibility for overseeing the youth housed in the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility. He is being sued in his individual capacity for actions taken under color of law.

**ANSWER: The allegations in Paragraph 34 are addressed to an unnamed Defendant STAFF PERSON 3, who has not been served with the Complaint. As such, Defendants are not required to respond on behalf of this Defendant. Because Defendant STAFF PERSON 3 has not been named, Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 and, on that basis, deny them. Defendants further state that Paragraph 34 states legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny all of the allegations in Paragraph 34 as stated. Defendants further state that SIR 2023C0000325, purportedly attached as Exhibit 2, speaks for itself.**

35. Defendant, STAFF PERSON 4 was at all times relevant hereto an employee Wayne County and acting within the scope of his employment with

responsibility for overseeing the youth housed in the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility. He is being sued in his individual capacity for actions taken under color of law.

**ANSWER: The allegations in Paragraph 35 are addressed to an unnamed Defendant STAFF PERSON 4, who has not been served with the Complaint. As such, Defendants are not required to respond on behalf of this Defendant. Because Defendant STAFF PERSON 4 has not been named, Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 and, on that basis, deny them. Defendants further state that Paragraph 35 states legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny all of the allegations in Paragraph 35 as stated. Defendants further state that SIR 2023C0000325, purportedly attached as Exhibit 2, speaks for itself.**

36. Defendant, STAFF PERSON 5 was at all times relevant hereto an employee Wayne County and acting within the scope of his employment and with responsibility for overseeing the youth housed in the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility. He is being sued in his individual capacity for actions taken under color of law.

**ANSWER: The allegations in Paragraph 36 are addressed to an unnamed Defendant STAFF PERSON 5, who has not been served with the Complaint.**

28

**As such, Defendants are not required to respond on behalf of this Defendant. Because Defendant STAFF PERSON 5 has not been named, Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 and, on that basis, deny them. Defendants further state that Paragraph 36 states legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 36 as stated. Defendants further state that SIR 2023C0000325, purportedly attached as Exhibit 2, speaks for itself.**

37. Defendant, SUPERVISOR 1, was at all times relevant hereto an employee of Wayne County and acting within the scope of his employment in a supervisory capacity with responsibility for making and implementing policies and procedures related to the JDF, ensuring that policies and procedures were followed, disciplining employees who violated policies and procedures and rules, overseeing the youth housed in the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility. He is being sued in his individual capacity for actions taken under color of law.

**ANSWER: The allegations in Paragraph 37 are addressed to an unnamed Defendant SUPERVISOR 1, who has not been served with the Complaint. As such, Defendants are not required to respond on behalf of this Defendant. Because Defendant SUPERVISOR 1 has not been named, Defendants are also**

29

**without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 and, on that basis, deny them. Defendants further state that Paragraph 37 states legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny all of the allegations in Paragraph 37 as stated. Defendants further state that SIR 2023C0000325, purportedly attached as Exhibit 2, speaks for itself.**

38. Defendant, SUPERVISOR 2, was at all times relevant hereto an employee of Wayne County and acting within the scope of his employment in a supervisory capacity with responsibility for making and implementing policies and procedures related to the JDF, ensuring that policies and procedures were followed, disciplining employees who violated policies and procedures and rules, overseeing the youth housed in the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility. He is being sued in his individual capacity for actions taken under color of law.

**ANSWER: The allegations in Paragraph 38 are addressed to an unnamed Defendant SUPERVISOR 2, who has not been served with the Complaint. As such, Defendants are not required to respond on behalf of this Defendant. Because Defendant SUPERVISOR 2 has not been named, Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 and, on that basis, deny them.**

30

**Defendants further state that Paragraph 38 states legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny all of the allegations in Paragraph 38 as stated.  Defendants further state that SIR 2023C0000325, purportedly attached as Exhibit 2, speaks for itself.**

39.     Defendant, DOE 2, identified as a JDF Juvenile Detention Specialist (Michigan State Police Investigation March 29th, 2023, Supplemental Date, page 6 of 10, Exhibit 3) was at all times relevant hereto an employee of Wayne County and acting within the scope of his employment in a supervisory capacity with responsibility for making and implementing policies and procedures related to the JDF, ensuring that policies and procedures were followed, disciplining employees who violated policies and procedures and rules, overseeing the youth housed in the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility. He is being sued in his individual capacity for actions taken under color of law.

**ANSWER: The allegations in Paragraph 39 are addressed to an unnamed Defendant DOE 2, who has not been served with the Complaint. As such, Defendants are not required to respond on behalf of this Defendant. Because the DOE 2 Defendant has not been named, Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 and, on that basis, deny them.**

**Defendants further state that Paragraph 39 states legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 39 as stated. Defendants further state that Michigan State Police Investigation March 29th, 2023, Supplemental Date, page 6 of 10, purportedly attached as Exhibit 3 to the Complaint, speaks for itself.**

40. Defendant, DOE 3, identified as a JDF Team Leader/Supervisor (Michigan State Police Investigation March 29th, 2023, Supplemental Date, page 8 of 10, Exhibit 3) was at all times relevant hereto an employee of Wayne County and acting within the scope of his employment in a supervisory capacity with responsibility for making and implementing policies and procedures related to the JDF, ensuring that policies and procedures were followed, disciplining employees who violated policies and procedures and rules, overseeing the youth housed in the JDF and ensuring the protection, safety, health, and well-being of the youth housed in the facility. He is being sued in his individual capacity for actions taken under color of law.

**ANSWER: The allegations in Paragraph 40 are addressed to an unnamed Defendant DOE 3, who has not been served with the Complaint. As such, Defendants are not required to respond on behalf of this Defendant. Because the DOE 3 Defendant has not been named, Defendants are also without**

**knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 and, on that basis, deny them. Defendants further state that Paragraph 40 states legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 40 as stated.   Defendants further state that Michigan State Police Investigation March 29th, 2023, Supplemental Date, page 8 of 10, purportedly attached as Exhibit 3 to the Complaint, speaks for itself.**

C.    **Michigan Department of Health and Human Services (MDHHS) Defendants.**

41.    Defendant ELIZABETH HERTEL is and was at all times relevant hereto, the Director of the MDHHS, charged with overseeing the JDF, licensing the facility, and monitoring the facility to ensure that the JDF provides proper care, education, health, and protection to the youths housed in it. She is responsible for developing and implementing policies and procedures for the operation and management of the JDF and its employees, including the care, custody, and protection of residents under the JDF jurisdiction. In her capacity as the Director of the MDHHS, she has full power, control and authority to have access to the facility and to oversee the facility in the supervision and control of JDF affairs to ensure that the staff is providing proper care to the juvenile residents in the JDF. She is also responsible for providing state residential treatment facilities for adjudicated youth

to obtain mental health care and other services necessary to complete their sentences. She is also responsible for ensuring that the JDF abides by the laws, policies, and regulations of the State of Michigan and of the United States of America. HERTEL was directly involved in concerns related to the JDF as early as the fall of 2022.[5] She is being sued in her individual capacity for actions taken under color of law.

**ANSWER:** **The allegations in Paragraph 41 are not directed at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 41 as stated. Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 and, on that basis, deny them. Defendants further state that the newspaper article mentioned in footnote 4 speaks for itself.**

42.     Defendant DEMETRUIS STARLING is and was at all times relevant hereto, the Senior Deputy Director of the MDHHS, charged with overseeing the JDF, licensing the facility, and monitoring the facility to ensure that the JDF provides proper care, education, health, and protection to the youths housed in it. He is and was responsible for developing and implementing policies and procedures for the operation and management of the JDF and its employees, including the care,

---

[5]      https://www.detroitnews.com/story/news/local/wayne-county/2023/11/02/wayne-county-juvenile-detention-center-loses-full-license-from-state/71422844007

custody, and protection of residents under the JDF jurisdiction. In her capacity as the Senior Deputy Director of the MDHHS, he has full power, control and authority to have access to the facility and to oversee the facility in the supervision and control of JDF affairs to ensure that the staff is providing proper care to the juveniles residents in the JDF. He is also responsible for providing state residential treatment facilities for adjudicated youth to obtain mental health care and other services necessary to complete their sentences He is also responsible for ensuring that the JDF abides by the laws, policies, and regulations of the State of Michigan and of the United States of America. He is being sued in her individual capacity for actions taken under color of law.

**ANSWER:  The allegations in Paragraph 42 are not directed at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 42 as stated. Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 and, on that basis, deny them.**

43.    Defendant STEVE YAGER is and was the Executive Director of the Division of Child Welfare Licensing (CWL) for the MDHSS and was at all times relevant hereto responsible for overseeing and monitoring onsite inspections of the JDF to determine compliance with state law and licensing rules, providing technical

assistance and consultation to improve the quality of service and investigating complaints alleging violations of licensing rules or law, and ensuring the protection to children who are receiving care from the JDF by enforcing rules and laws such as the Child Care Organizations Act (1973 PA 116) and revoking the license if the JDF was failing to do so and jeopardizing the safety, health, and well-being of the youth housed in the facility. He is being sued in his individual capacity for actions taken under color of law.

**ANSWER:  The allegations in Paragraph 43 are not directed at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny all of the allegations in Paragraph 43 as stated.  Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 and, on that basis, deny them.**

44.    Defendant ASHLEIGH BROTHERSON is and was at all times relevant hereto the Division Director of CLW for the MDHSS and was at all times relevant hereto responsible for overseeing and monitoring onsite inspections of the JDF to determine compliance with state law and licensing rules, providing technical assistance and consultation to improve the quality of service and investigating complaints alleging violations of licensing rules or law, and ensuring the protection to children who are receiving care from the JDF by enforcing rules and laws such as

36

the Child Care Organizations Act (1973 PA 116) and revoking the license if the JDF was failing to do so and jeopardizing the safety, health, and well-being of the youth housed in the facility. She is being sued in her individual capacity for actions taken under color of law.

**ANSWER: The allegations in Paragraph 44 are not directed at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 44 as stated. Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 and, on that basis, deny them.**

45.     Defendant CHRIS BARR, is and was at all times relevant hereto, a CWL Consultant for the MDHHS Division of Child Welfare Licensing and was responsible for conducting onsite inspections of the JDF to determine compliance with state law and licensing rules, providing technical assistance and consultation to improve the quality of service and investigating complaints alleging violations of licensing rules or law, and ensuring the protection to children who are receiving care from the JDF by enforcing rules and laws such as the Child Care Organizations Act (1973 PA 116). He is being sued in his individual capacity for actions taken under color of law.

**ANSWER:  The allegations in Paragraph 45 are not directed at Defendants and**

state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 45 as stated. Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 and, on that basis, deny them.

46.     Defendant VIVIAN MALLECK, is and was at all times relevant hereto, a CWL Consultant for the MDHHS Division of Child Welfare Licensing and was responsible for conducting onsite inspections of the JDF to determine compliance with state law and licensing rules, providing technical assistance and consultation to improve the quality of service and investigating complaints alleging violations of licensing rules or law, and ensuring the protection to children who are receiving care from the JDF by enforcing rules and laws such as the Child Care Organizations Act (1973 PA 116). He is being sued in his individual capacity for actions taken under color of law.

ANSWER:  The allegations in Paragraph 46 are not directed at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 46 as stated. Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46 and, on that basis, deny them.

**IV.**

**STATEMENT OF FACTS**

**A.** **The Deplorable Conditions of the Detention for Youth at the JDF**

47. Defendant Wayne County operates the JDF, which is the largest of the state's 26 county or court-operated juvenile detention facilities.

**ANSWER: Defendants admit that Defendant Wayne County operates the JDF. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 47 and, on that basis, deny them. To the extent Paragraph 47 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

48. The JDF houses boys and girls between the ages of 9 and 18.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 and, on that basis, deny them. To the extent Paragraph 48 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

49. Most of the children housed in the JDF are children of color who have been detained for alleged offenses resulting from life conditions of poverty, mental illness, substance abuse, and parental neglect.

**ANSWER: Defendants deny the allegations in Paragraph 49 as stated. To the extent Paragraph 49 alleges Defendants acted unlawfully, Defendants deny the**

**allegations as untrue.**

50.     Some children are housed in the JDF facility while they are waiting adjudication related to juvenile charges. After adjudication, the child is supposed to be either released from the facility with or without sentencing/probationary terms, or they are sentenced and ordered by a judge to be transferred to a state residential treatment facility to serve out their sentence and undergo special health care treatment and counseling before they are released.

**ANSWER: The allegations in Paragraph 50 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 50 as stated, except that Defendants admit only that some children are housed in the JDF facility while they are waiting adjudication related to criminal charges. Defendants deny the remaining allegations in Paragraph 50 as stated. To the extent Paragraph 50 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

51.     While children who are adjudicated are supposed to be released from the JDF facility with or without sentencing/probationary terms, or they are sentenced and ordered by a judge to be transferred to a state residential treatment facility to serve out their sentence and undergo special health care treatment and counseling, at all times relevant hereto, a large percentage of the children housed in the JDF had already been adjudicated but were required to stay in the JDF because of a lack of

state residential treatment facilities.

**ANSWER: The allegations in Paragraph 51 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 51 as stated, except Defendants admit that there is a lack of state residential treatment facilities. The remaining allegations contained in Paragraph 51 are denied as stated. To the extent Paragraph 51 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

52. The MDHHS is responsible for securing residential treatment facilities to which the children are sent after they are adjudicated, sentenced and ordered into treatment.

**ANSWER: The allegations contained in Paragraph 52 are not directed to Defendants. To the extent an answer may be required, Defendants admit the allegations in Paragraph 51 as stated. To the extent Paragraph 52 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

53. For years, the MDHSS has failed to provide a sufficient number of state-licensed placement beds for adjudicated children.

**ANSWER: The allegations contained in Paragraph 53 are not directed to Defendants. To the extent an answer may be required, Defendants admit the allegations in Paragraph 53 as stated. To the extent Paragraph 53 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

41

54.     In the spring of 2022, the JDF struggled with understaffing and overcrowding so severe that it was operating under a "temporary disaster" plan.[6]

**ANSWER:  The allegations in Paragraph 54, including footnote 6, state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants only admit that it operated under a State of Michigan approved variance and deny the remaining allegations in Paragraph 54 as stated.  Defendants further state the newspaper article in footnote 5 speaks for itself. To the extent Paragraph 54 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

55.     While housed in the JDF, children are supposed to be provided with basic care, including recreational time out of their rooms, daily showers, education, mental health care, medical care, and vital medication.

**ANSWER:  The allegations in Paragraph 55 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations as stated.  To the extent Paragraph 55 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

56.     For years prior to T.M.'s detention at JDF, numerous complaints were made to the JDF that it was confining youths to their rooms for extended periods of

---

[6]     https://www.freep.com/story/news/local/michigan/wayne/2022/09/23/jdf-wayne-county-juvenile-jail-complaints/69510344007/

42

time, depriving them of basic care, including daily showers, recreation time and vital medication.[7]

**ANSWER:  The allegations in Paragraph 56, including footnote 7, state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations as stated. Defendants further state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54 and, on this basis, deny them. Defendants further state the newspaper article in footnote 6 speaks for itself and Defendants deny any attempt by Plaintiff to characterize or interpret same. To the extent Paragraph 54 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

57.     In April of 2022, the MDHHS approved the JDF's request for a waiver of licensing rules – variance-allowing the JDF to operate with fewer staff and allowing the JDF to lock up children in their rooms facility-wide when there were not enough workers.[8]

**ANSWER: The allegations in Paragraph 57, including footnote 8, state legal conclusions to which no answer is required.  To the extent an answer may be**

---

[7]     https://www.freep.com/story/news/local/michigan/wayne/2022/09/23/jdf-wayne-county-juvenile-jail-complaints/69510344007/

[8]     https://www.freep.com/story/news/local/michigan/wayne/2022/09/23/jdf-wayne-county-juvenile-jail-complaints/69510344007/

**required, Defendants deny the allegations as stated, except that Defendants only admit that it operated under a State of Michigan approved variance. Defendants deny the remaining allegations in Paragraph 57 as stated. Defendants further state the newspaper article in footnote 7 speaks for itself and Defendants deny any attempt by Plaintiff to characterize or interpret same. To the extent Paragraph 57 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

58. Pursuant to the federal Prison Rape Elimination Act (PREA), which applies to JDF, the resident to staff ratio in a juvenile detention facility is required to be no less than 10 to 1. The ratio at the JDF was 20 to 1.[9]

**ANSWER: The allegations in Paragraph 58, including footnote 9, state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations as stated. Defendants further state that the federal Prison Rape Elimination Act ("PREA") speaks for itself, and Defendants deny any attempt by Plaintiff to characterize or interpret same. Defendants further state hearing referenced in footnote 8 speaks for itself and Defendants deny any attempt by Plaintiff to characterize or interpret same. To the extent Paragraph 58 alleges Defendants acted unlawfully, Defendants deny**

---

[9] Michigan Senate Appropriations Subcommittee Emergency Hearing on March 22, 2023. https://committees.senate.michigan.gov/details?com=DHHS&sessionId=15

**the allegations as untrue.**

59. Licensing rules prohibit seclusion except in narrow, special circumstances, and when seclusion is imposed, it must not be for more than three days.

**ANSWER: The allegations in Paragraph 59 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 and, on this basis, deny them. Answering further, Paragraph 59 does not contain any specificity regarding which licensing rules Plaintiff is referencing. To the extent Paragraph 59 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

60. Placing children in seclusion/solitary confinement which involves isolating them in small cells between 22 and 24 hours a day, as a way of discipline, behavior control and sometimes even for administrative convenience, has been shown to cause significant neurological and psychological damage, and can even lead to suicide in the most serious cases.

**ANSWER: The allegations in Paragraph 60 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations as stated. To the extent Paragraph 60 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

45

61.     Under PREA, detention centers must afford youths the opportunity for daily large-muscle exercise, and to take part in special education services, programs and work opportunities. PREA Standard § 115.14.

**ANSWER: The allegations in Paragraph 61 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations as stated.  Defendants only admit that PREA Standard §115.14 speaks for itself and Defendants deny any attempt by Plaintiff to characterize or interpret same. To the extent Paragraph 61 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

62.     Secluding a child to a small room for over 20 hours a day amounts to solitary confinement and cruel and unusual treatment.

**ANSWER: The allegations in Paragraph 62 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations as stated.  To the extent Paragraph 62 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

63.     After the variance was granted, JDF confined children to their rooms for days with no recreation time, educational services, or showers.[10]

**ANSWER: The allegations in Paragraph 63 state legal conclusions to which no**

---

[10]     https://www.freep.com/story/news/investigations/2022/10/28/wayne-county-juvenile-jail-jdf/69597822007/

**answer is required. To the extent an answer may be required, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 and footnote 9 and, on that basis, deny them. Defendants only admit that newspaper article in footnote 9 speaks for itself and Defendants deny any attempt by Plaintiff to characterize or interpret same. To the extent Paragraph 63 alleges Defendants acted unlawfully, Defendants deny the allegations.**

64.     After being confined to their rooms for days without showers, education, and recreation time, JDF youths predictably became distraught and angry and began to act out.

**ANSWER: The allegations in Paragraph 64 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations as stated. To the extent Paragraph 64 alleges Defendants acted unlawfully, Defendants deny the allegations.**

65.     In May of 2022, after the rules variance was granted, police were called to JDF to control a group of 18 residents who had gotten out of their secured rooms after a youth had popped a lock and snagged a staffer's set of keys. The residents then destroyed property and fought each other.[11]

---

[11]     https://www.freep.com/story/news/local/michigan/wayne/2022/09/23/jdf-wayne-county-juvenile-jail-complaints/69510344007/

47

**ANSWER: The allegations in Paragraph 65 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65 and, on this basis, deny them. Defendants only admit that newspaper article in footnote 10 speaks for itself and Defendants deny any attempt by Plaintiff to characterize or interpret same. To the extent Paragraph 65 alleges Defendants acted unlawfully, Defendants deny the allegations.**

66.     After the MDHHS granted the variances, multiple complaints regarding the conditions of the JDF were lodged with the MDHHS about the abysmal conditions for youth at the JDF which resulted in multiple licensing violation investigations by the state commencing as early as August of 2022.

**ANSWER: The allegations in Paragraph 66 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66 and, on this basis, deny them. To the extent Paragraph 66 alleges Defendants acted unlawfully, Defendants deny the allegations.**

67.     The MDHHS's failure to take appropriate steps to address the lack of state-licensed placement beds for adjudicated youths resulted in youth residents at

the JDF languishing in the facility for months after their cases had been adjudicated, while waiting to serve out their sentences and receive the necessary health care treatment and counseling ordered by the judge required before they could be released back to their home. This situation has unjustly extended the youths' sentencing and punishment.

**ANSWER: The allegations in Paragraph 67 are not directed at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 67 and, on this basis, deny them. To the extent Paragraph 67 alleges Defendants acted unlawfully, Defendants deny the allegations.**

68.    In September of 2022, nearly half of the 140 youths held in the JDF were ordered by judges into residential treatment and counseling but were awaiting placement, some on standby for months. In one instance, a child was in JDF custody for 800 days.[12]

**ANSWER: The allegations in Paragraph 68 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of**

---

[12]    https://www.freep.com/story/news/local/michigan/2022/10/20/whitmer-juvenile-treatment- shortage-michigan/69577383007/

**the allegations contained in Paragraph 68, including footnote 11, and, on this basis, deny them. To the extent Paragraph 68 alleges Defendants acted unlawfully, Defendants deny the allegations.**

69. Other children for whom no placement could be found were sent out-of-state at taxpayer expense.

**ANSWER: The allegations in Paragraph 69 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 69 as stated. To the extent Paragraph 69 alleges Defendants acted unlawfully, Defendants deny the allegations.**

70. In October 2022, Wayne County transferred the JDF Detroit population to the William Dickerson Juvenile Detention Facility (Dickerson) located in Hamtramck, Michigan.

**ANSWER: The allegations in Paragraph 70 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants admit them. To the extent Paragraph 70 alleges Defendants acted unlawfully, Defendants deny the allegations.**

71. Dickerson was built to house 80 adults, was never designed or modified to safely hold children, and was never designed or modified to handle a greater number of residents of any age.

**ANSWER: The allegations in Paragraph 71 state legal conclusions to which no**

**answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 71, and, on this basis, deny them. To the extent Paragraph 71 alleges Defendants acted unlawfully, Defendants deny the allegations.**

72.    As of December 2022, 138 juveniles were housed at Dickerson JDF with 65 of those 138 children waiting to be placed in a treatment facility.[13]

**ANSWER: The allegations in Paragraph 72, including footnote 13, state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 72, including footnote 13, and, on this basis, deny them. To the extent Paragraph 72 alleges Defendants acted unlawfully, Defendants deny the allegations.**

73.    Since October of 2022, youth housed in the Dickerson JDF were largely left to educate themselves because the school that was providing services to the JDF in Detroit was not authorized to operate in locations other than Detroit.

**ANSWER:  The allegations in Paragraph 73 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny**

---

[13]    https://www.freep.com/story/news/investigations/2022/12/16/teachers-absent-wayne-county- juvenile-jail/69728001007/

**the allegations as stated. To the extent Paragraph 73 alleges Defendants acted unlawfully, Defendants deny the allegations.**

74. Even before the move to Dickerson, the JDF was providing inadequate education to the youth residents- a teacher's presence in the facility was sporadic, and youth were not given writing instruments with which to complete schoolwork packets.[14]

**ANSWER: The allegations in Paragraph 74, including footnote 14, state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations as stated. Defendants further state that footnote 14 speaks for itself, and Defendants deny any attempt by Plaintiff to characterize or interpret same. To the extent Paragraph 74 alleges Defendants acted unlawfully, Defendants deny the allegations.**

75. In January of 2023, Wayne County and the MDHHS continued to point fingers at one another for the overcrowded and understaffed conditions at the JDF and the lack of state residential treatment facilities resulting in adjudicated youths being housed at the JDF after they had been ordered into residential treatment facilities to receive treatment and counseling as part of their sentence before they could be released into the community.

---

[14] https://www.freep.com/story/news/investigations/2022/12/16/teachers-absent-wayne-county- juvenile-jail/69728001007/

**ANSWER: The allegations in Paragraph 75 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations as stated. To the extent Paragraph 75 alleges Defendants acted unlawfully, Defendants deny the allegations.**

76.    In a letter dated January 24, 2023, from Wayne County Executive, Defendant Warren C. Evans to Governor Gretchen Whitmer, Warren wrote:

> "I write to express to you my ongoing concern regarding the state's refusal to accept youths that are rightfully yours…. The severe shortage of state-licensed placement beds for adjudicated delinquent youth and the state's own failure to take adequate steps to address this problem has now directly impacted the operations of the WCJDF. As of this writing, 150 youth are housed at the WCJDF. Seventy of these youths are your wards awaiting placement in a state-licensed child-caring institution. The state's …inability to execute a plan to increase capacity for adjudicated youth, has created and subsequently exacerbated the crisis at our JDF."
>
> "The present shortage of juvenile justice services was foreseeable and avoidable…"
>
> ***************************
> "…We understand that there is a nearly two-year waiting list for secure residential placement. **This is completely unacceptable condition that requires action from your administration**…. However, the state must lead the state licenses Child Caring institutions and is responsible for ensuring that children adjudicated delinquent by a Michigan court have reasonable, assured access to critical services. Children should not be left to languish in detention facilities that were never intended to house them on long-term basis. **However, through the collective inaction of MDHHS, this is the reality we now face."** (emphasis added)

**ANSWER: The allegations in Paragraph 76 state legal conclusions to which no**

53

**answer is required.  To the extent an answer may be required, Defendants states only that the writing speaks for itself, and Defendants deny any attempt by Plaintiff to characterize or interpret same. Answering further, Paragraph 77 appears to quote language but does not attach to the Complaint the writing or citation for which Paragraph 76 seemingly quotes and/or references. To the extent Paragraph 76 alleges Defendants acted unlawfully, Defendants deny the allegations.**

77.    MDHHS responded to Defendant Evans' letter via email written by Defendant Demetrius Starling, Senior Deputy Director Children's Services Administration MDHHS, basically directing Wayne County to implement more community-based treatment and supervision options.

**ANSWER: The allegations in Paragraph 77 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants states only that the writing speaks for itself, and Defendants deny any attempt by Plaintiff to characterize or interpret same. Answering further, Paragraph 77 appears to quote language but does not attach the writing or citation for which Paragraph 77 quotes and/or references. To the extent Paragraph 77 alleges Defendants acted unlawfully, Defendants deny the allegations.**

78.    Defendant Evans responded to Defendant Starling's email in a letter dated February 9, 2023, writing:

54

"Disappointingly, your email to Court and County officials completely misses the central problem Wayne County faces-a lack of secure and non- secure residential placement beds, which has caused an unprecedented number of adjudicated youths to languish in detention, waiting for a placement that may never materialize…"

**ANSWER: The allegations in Paragraph 78 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants states only that the writing speaks for itself, and Defendants deny any attempt by Plaintiff to characterize or interpret same. Answering further, Paragraph 78 appears to quote language but does not attach the writing or citation for which Paragraph 78 quotes and/or references. To the extent Paragraph 78 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

79.     Further objecting to the state placing the blame and burden of taking action to address the problems on Wayne County, Evans emphasized in his February 9, 2023 letter to Defendant Starling:

"the vast majority of the adjudicated youths detained at the JDF require out-of-home placement because of the severity of the offense for which they were adjudicated or for complex treatment needs….**the State has played a large part in creating( the problem) but has done nothing tangible to fix**."( emphasis added)

**ANSWER: The allegations in Paragraph 79 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants states only that the writing speaks for itself, and Defendants deny any attempt by Plaintiff to characterize or interpret same. Answering further, Paragraph 79**

55

**appears to quote language but does not attach the writing for which Paragraph**

**79 quotes and/or references. To the extent Paragraph 79 alleges Defendants**

**acted unlawfully, Defendants deny the allegations as untrue.**

80.     As of March of 2023, there were only 160 therapeutic beds in the entire state. Previously there were 500.[15]

**ANSWER: The allegations in Paragraph 80, including footnote 15, state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80, including footnote 15, and, on that basis, deny them. To the extent Paragraph 78 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

81.     As a result of the overcrowding and understaffing conditions at the JDF and complaints that youths were being locked in their rooms for extended periods of time, the Wayne County Defendants implemented a policy, custom and practice of allowing the youths to be out of their rooms without supervision.

**ANSWER: The allegations in Paragraph 81 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations contained in Paragraph 81 as stated.**

82.     In 2023, Wayne County Defendants also implemented a policy, custom,

---

[15]      https://cloud.castus.tv/vod/misenate/video/641c5bded3cb3b00089b4009?page=HOME

and practice and custom of no longer requiring JDF staff responsible to monitor the JDF youth, to keep the youth within their line of sight or to make rounds every 15 minutes to check on the location of the youth and instead stay in the Control Room and monitor the youth from inside the room although the staff did not have direct visual contact to all the rooms from the Control Room.

**ANSWER: The allegations in Paragraph 82 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations contained in Paragraph 82 as stated.**

83. The Michigan Welfare Act, MCL 400.115, et seq. promulgates the Licensing Rules for Child Caring Institutions governing the conditions of the juvenile detention facilities. These Michigan Administrative Rules are set forth in the MDHHS's Juvenile Justice Residential Policy Manual (JJPM) and the Department of Consumer and Industry Service Division of Child Welfare Licensing for Juvenile Facilities. As set forth in the JJPM:

> The purpose of this policy is to ensure facility staff, including contractors, sub-contractors, interns and volunteers avoid exposing youth to actual or potentially negative influences in compliance with the Prison Rape Elimination Act National Standards Subpart D, Standards for Juvenile Facilities, Child Caring Institution licensing rules and the Michigan Department of Health and Human Services (MDHHS)/State of Michigan hiring guidelines and rules.

**ANSWER: The allegations in Paragraph 83 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants only**

57

admit that that MCL 400.115, et. seq., the MDHH's Juvenile Justice Residential Policy Manual ("JJPM"), and the Department of Consumer and Industry Service Division of Child Welfare Licensing for Juvenile Facilities speak for themselves, and Defendants deny any attempt by Plaintiff to characterize or interpret same. To the extent Paragraph 83 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.

84.   At all times relevant hereto, Defendants engaged in repeated and egregious violations of the Michigan Administrative Code, including but not limited to violations of:

  a. Sufficiency of Staff- R 400.4126;
  b. Staff to Resident Ratio- R 400.4127;
  c. Criminal History Check- R 400.4112;
  d. Intervention Standards and Prohibitions- R 400.4158; and
  e. Performing variable eye-on 15 interval checks on youth.

**ANSWER: The allegations in Paragraph 84, including subparagraphs, state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations contained in Paragraph 84, including subparagraphs, as stated. To the extent Paragraph 84 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

**B.    T.M. Inhumane Treatment and Sexual and Physical Assault While Housed at the JDF**

85.   Plaintiff's Next Friend, T. M., was at all times relevant hereto 11 and 12 years old and a youthful resident at the JDF from February 2022 to March of

58

2022, from April of 2022 to July of 2022, and from August of 2022 to March 16, 2023.

**ANSWER: The allegations in Paragraph 85 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85 and, on that basis, deny them. To the extent Paragraph 85 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

86.    During T.M.'s detention within the JDF, he was subjected to the following inhumane conditions of detention, among others, which constituted cruel and unusual punishment:

   a. Prolonged time locked up in his room for 22 to 24 hours a day;
   b. Overcrowding of the facility;
   c. Extended periods of solitary confinement;
   d. Denial of mental health care;
   e. Denial of behavioral treatment;
   f. Denial of medical health care;
   g. Denial of education;
   h. Denial of proper hygiene, including regular showers;
   i. Denial of sufficient food and sustenance;
   j. Denial of proper supervision;
   k. Denial of physical exercise;
   l. Denial of access to recipient rights;
   m. Denial of visitation rights;
   n. Denial of attorney visits;
   o. Sexual harassment;
   p. Sexual assault by residents;;
   q. Physical assault by residents;
   r. Failure to perform risk assessments and separate him from

  substantially older residents and or separation based on risk assessment ;

s. Failure to provide required staff/resident ratios as required by Prison Rape Elimination Act (PREA);

t. Failure to obtain information from T.M. and other residents necessary for proper placement in housing, beds, programs, education, and work assignments in violation of PREA;

u. Failure to properly train and educate staff in violation of PREA;

v. Failure to provide adequate reporting mechanisms for threatened harm; and

w. Failure to provide adequate monitoring and supervision.

**ANSWER: The allegations in Paragraph 86, including subparagraphs, state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86, including subparagraphs, and, on that basis, deny them. To the extent Paragraph 86 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

87. On March 14, 2023, T.M. was being housed in Unit A of the Health and Wellness Pod. The Health and Wellness Pod has three units- Unit A, B and C.

**ANSWER: The allegations in Paragraph 87 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 and, on that basis, deny them. To the extent Paragraph 87 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

88.     On March 14, 2023, T.M. complained to JDF staff that he was being physically threatened by another resident.

**ANSWER: The allegations in Paragraph 88 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 and, on that basis, deny them. To the extent Paragraph 88 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

89.     Following T.M.'s complaint, at approximately 6:16 pm, JDF staff physically transferred T.M. from Unit A to Unit B of the Health and Wellness Pod.

**ANSWER: The allegations in Paragraph 89 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 and, on that basis, deny them. To the extent Paragraph 89 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

90.     At the time that JDF staff transferred T.M. to the Unit B of the Health and Wellness Pod, staff and supervision knew that it was dangerous to transfer T.M. to this Unit B because twin brothers were housed in the Unit B and there was a policy not to house relatives/co-defendants on the same unit because of differences and

influence they may have. (MSP Investigative Report, June 13, 2023, Supplemental Date, page 3 of 3, attached as Exhibit 3).

**ANSWER: The allegations in Paragraph 90 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 and, on that basis, deny them. Defendants further deny the allegations in Paragraph 90 as stated. Defendant further states that MSP Investigative Report, June 13, 2023, Supplemental Date, page 3 of 3, purportedly attached as Exhibit 3, speaks for itself and Defendants deny any attempt by Plaintiff to characterize or interpret same. To the extent Paragraph 91 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

91. Prior to T.M. being transferred to Unit B, a staff member told his supervisor that it was dangerous to transfer him to Unit B. (MSP Investigative Report, March 29, 2023, Supplemental Date, page 4 of 10, attached as Exhibit 3).

**ANSWER: The allegations in Paragraph 91 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91 and, on that basis, deny them. Defendant further states that MSP Investigative Report, March 29th, 2023, Supplemental**

**Date, page 4 of 10, purportedly attached as Exhibit 3, speaks for itself and Defendants deny any attempt by Plaintiff to characterize or interpret same. To the extent Paragraph 91 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

92. On March 14 and 15th, 2023, there were 5 staff Persons and 2 Supervisors assigned to the Health and Wellness Pod, as follows:

    a. Staff Person 1 worked the 3 p.m. to 11 p.m. shift;
    b. Staff Person 2 worked the 3 p.m to 11 p.m shift ;
    c. Staff Person 3, worked the 3 p.m. to 11 p.m shift ;
    d. Staff Person 4, worked the 11 p.m. to 7 a.m. shift ;
    e. Staff Person 5 worked the 11p.m. to 7 a.m. shift;
    f. Supervisor 1 worked the 3 p.m. to 11 p.m. shift;
    g. Supervisor 2 worked the 11 p.m. to 7 a.m. shift.

**ANSWER: The allegations in Paragraph 92, including subparagraphs, state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92, including subparagraphs, and, on that basis, deny them. To the extent Paragraph 92, including subparagraphs, alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

93. As reported in a Special Investigative Report (SIR) dated January 3, 2024, No. 2023C0000325, completed by Defendant MDHHS (attached as Exhibit 2), Wayne County Defendants failed to conduct a criminal background history and

63

hired staff persons and supervisors who were responsible for supervising, monitoring and protecting T.M. who had a history of child abuse or neglect and/or lacked the ability to perform duties of the position assigned and/or the experience to perform the duties of the position assigned.

**ANSWER: The allegations in Paragraph 93 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93 and, on that basis, deny them. Defendant further state that the allegations directed towards conduct of Defendants are denied as state. Defendant further states that Special Investigative Report (SIR) dated January 3, 2024, No. 2023C0000325, purportedly attached as Exhibit 2, speaks for itself and Defendants deny any attempt by Plaintiff to characterize or interpret same. To the extent Paragraph 93 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

94. On March 14th and 15th, 2023, there were five other male residents in Unit B identified herein as Youth A (T.M.), Youth B, C, D, E, and F.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94 and, on that basis, deny them. To the extent Paragraph 94 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

64

95. At least one of the male residents was 18 years old or older.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95 and, on that basis, deny them. To the extent Paragraph 95 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

96.    Upon information in belief, at least one of the residents in Unit B had a history of sexual misconduct and/or had been charged of crimes involving sexual misconduct.

**ANSWER: The allegations in Paragraph 96 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96 and, on that basis, deny them. To the extent Paragraph 96 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

97. During the night of March 14, 2023, and morning of March 15, 2023, while in Unit B, T.M. was viciously attacked and beaten and anally raped by Youths B,C,D,E and F.

**ANSWER: The allegations in Paragraph 97 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of**

the allegations in Paragraph 97 and, on that basis, deny them. To the extent Paragraph 97 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.

98. Prior to T.M being physically and sexually assaulted, JDF supervision directed staff to allow residents to stay out of their rooms all the times. (MSP Investigative Report, March 29th, 2023, Supplemental Date, page 8 of 10, Exhibit 3).

**ANSWER: The allegations in Paragraph 98 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98 and, on that basis, deny them. Defendant further states that MSP Investigative Report, March 29th, 2023, Supplemental Date, page 8 of 10, purportedly attached as Exhibit 3, speaks for itself and Defendants deny any attempt by Plaintiff to characterize or interpret same.  To the extent Paragraph 98 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

99. Prior to T. M. being physically and sexually assaulted, JDF Defendants knew that youth were staying in each other's rooms all the time, including boys in Unit B. (MSP Investigative Report, March 29th, 2023, Supplemental Date, page 4 of 10, Exhibit 3)

**ANSWER: The allegations in Paragraph 99 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 99 and, on that basis, deny them. Defendant further states that MSP Investigative Report, March 29th, 2023, Supplemental Date, page 4 of 10, purportedly attached as Exhibit 3, speaks for itself and Defendants deny any attempt by Plaintiff to characterize or interpret same. To the extent Paragraph 99 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

100. Prior to T.M. being physically and sexually assaulted, a JDF staff member told his supervisor that due to residents being unsecured and out of each other's rooms he was worried there was potential for sexual inappropriate behavior and assaults. (MSP Investigative Report, March 29th, 2023, Supplemental Date, page 4 of 10, Exhibit 3)

**ANSWER: The allegations in Paragraph 100 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100 and, on that basis, deny them. Defendant further states that MSP Investigative Report, March 29th, 2023, Supplemental Date, page 4 of 10, purportedly attached as Exhibit 3, speaks for itself and**

67

**Defendants deny any attempt by Plaintiff to characterize or interpret same.  To the extent Paragraph 100 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

101. As reported in a Special Investigative Report (SIR) dated January 3, 2024, No. 2023C0000325, completed by Defendant MDHHS (attached as Exhibit 2), JDF video surveillance shows the following events that transpired in Unit B of the Health and Wellness Pod on March 14th and 15th, 2023, between 06:16 pm to 01:29 am:

    a.  06:16 pm - Youth A (T.M.) is escorted onto unit-B and staff leave.

    b.  08:00 pm - Staff did not enter the unit to lock-down youth in their respective cells.

    c.  08:41 pm – Supervisor 1 exits unit-B with a nurse.

    d.  09:18 pm – Youth A (T.M.), Youth B, Youth C, Youth D, Youth E and Youth F are inside room 10 -up (upstairs room 10).

    e.  09:20 pm – Staff Person 2 enters unit-B with a nurse and exits at 09:23 pm.

    f.  09:21 pm – All youth exit room 10-up and walk downstairs. Youth A appears to be wiping tears from his eyes and face.

    g.  09:38 pm – **Youth surround Youth A(T.M.) who has his hands up. Youth D and Youth E are observed punching Youth A as he is**

68

**seated at a table. Staff members can see this assault as it happens but do not enter the unit.**

h.  09:51 pm – Youth A(T.M.) enters room 7-up along with all other youth who continually walk in and out of the room. Staff do not enter the unit.

i.  10:05 pm – All youth, except Youth A(T.M.), exit room 7-up. Staff Person 2 only stands at the door to speak with youth and does not fully enter the unit with a nurse. All youth, except for Youth A, are observed entering and exiting room 7-up.

j.  10:08 pm – All youth, except for Youth A(T.M.), are downstairs.

k.  10:40 pm – Youth A(T.M.) exits room 7-up and walks downstairs.

l.  10:48 pm – Staff Person 2 opens the unit door and gives Youth E towels. Staff Person 2 leaves and comes back and opens the unit door but does not fully enter the unit before exiting.

m. 11:05 pm – Youth A(T.M.) is observed walking on the lower level of the unit with a towel on his head.

n.  11:14:25 pm - Staff Person 2 leaves the control room and hands a tee shirt to an unknown youth on unit B.

o.  11:14:26 pm - Youth A(T.M.) is observed trying to run out of the unit past Staff Person 2. Staff Person 2 shoves Youth A(T.M.) back into the unit and closes the door.

p.  11:32 pm – Youth A(T.M.) is still observed walking on the lower level of the unit with a towel on his head.

q.  12:13 pm – Staff Person 5 looks into unit B but does not enter.

r.  12:24 pm – Staff Person 6 slides paperwork under Unit B door but does not enter.

s.  12:33 pm – Staff Person 5 looks into unit B door but does not enter. It is noted that a pillar blocks video surveillance of the room 10-down door.

t.  01:16 am – **Youth A** (T.M.) **stands up on a table in the common area and appears naked. 22 seconds later Staff Person 4 is observed at the unit B door.**

u.  01:17 am – Youth E and Youth F begin assaulting Youth A(T.M.) and go out of camera view. Staff Person 4 and Staff Person 5 walk toward Unit B door from outside the unit.

v.  01:23 am – Supervisor 2 enters the control room.

w. 01:26 am – Youth A (T.M.) is assaulted at tables

x.  01:27 am – **Supervisor 1 arrives and enters unit B as Youth E continues to assault Youth** A (T.M.). Staff Person 4 and Staff Person 5 enter unit B, and escort Youth A (T.M.) out of unit B.

**ANSWER:  The allegations in Paragraph 101 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants**

**are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101 and, on that basis, deny them. Defendant further states that Special Investigative Report (SIR) dated January 3, 2024, No. 2023C0000325, purportedly attached as Exhibit 2, speaks for itself and Defendants deny any attempt by Plaintiff to characterize or interpret same. To the extent Paragraph 101 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

102. During the timeframe set forth above, Youth A (T.M.) was repeatedly physically assaulted and gang raped by Youths B,C,D,E, and F.

**ANSWER: The allegations in Paragraph 103 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103 and, on that basis, deny them. To the extent Paragraph 102 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

103. At all times relevant hereto, Staff Persons 1-5 and Supervisors 1 and 2 either observed T.M. being physically and sexually assaulted or could have seen the assaults, but for deliberate indifference, and/or they knew or should have known that the physical and sexual assaults were occurring or were substantially likely to occur.

**ANSWER: The allegations in Paragraph 103 state legal conclusions to which**

71

**no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 103 as untrue. To the extent Paragraph 103 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

104. At no time during T.M.'s physical and sexual assaults did JDF Staff Persons 1- 5 or Supervisors 1 and 2 intervene to stop the assaults.

**ANSWER: The allegations in Paragraph 104 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 104 as untrue. To the extent Paragraph 104 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

105.  JDF staff and supervision failed to take action to prevent T.M.'s physical and sexual assaults because staff and supervision had been directed by JDF management and administration to:

    a.  Allow the residents to stay out of their rooms all the time;

    b.  Stay in Unit B's Control Room and not come out onto the Unit to perform 15-minute whereabout checks of the residents;

    c.  Not intervene when residents get into physical altercations;

    d.  Not intervene when residents get into sexual alterations;

    e.  Not keep the residents in their line of vision but instead stay in the Control Room which does not provide a full range of vision for Unit B rooms and the common areas; and

f. Not secure vacant rooms.

**ANSWER: The allegations in Paragraph 105, including subparagraphs, state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 105, including subparagraphs, as untrue. To the extent Paragraph 105 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

106. As a result of this physical and sexual assaults, T.M. sustained severe traumatic physical and psychological injuries, including an injury to his eye, wrist, ribs, and gash to his head.

**ANSWER: The allegations in Paragraph 106 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106 and, on that basis, deny them. To the extent Paragraph 106 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

107. Following the physical and sexual assaults, T.M. was transported to Detroit Children's Hospital.

**ANSWER: The allegations in Paragraph 107 state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth**

**of the allegations in Paragraph 107 and, on that basis, deny them.**

108. Wayne County Defendants failed to notify T.M.'s mother that he had been taken to the hospital due to sexual and physical assaults until hours after he was admitted into the hospital.

**ANSWER: The allegations in Paragraph 108 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108 and, on that basis, deny them.**

109.   JDF Defendants failed to tell T.M.'s mother that he had been a victim of a sexual assault until the evening of March 15th.

**ANSWER: The allegations in Paragraph 109 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109 and, on that basis, deny them.**

110. At no time while T.M. was hospitalized was T.M.'s mother permitted to be present with her son to provide him with comfort, support, and consent and take part in important treatment and other decisions.

**ANSWER: The allegations in Paragraph 110 state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth**

**of the allegations in Paragraph 110 and, on that basis, deny them.**

111. T.M.'s mother was not permitted to see T.M. until he was released from the hospital on March 15th, returned to the JDF/ Dickerson facility and released from JDF by a judge on March 16th.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111 and, on that basis, deny them.**

112.   On March 21, 2023, after T.M. was sexually and physically assaulted, MDHHS Defendants issued a Corrective Action Plan (CAP) that identified licensing violations and set forth a 15-part Plan for Compliance Achievements (March 21, 2023, CAP attached hereto as Exhibit 4).

**ANSWER: The allegations in Paragraph 112 are not directed at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 112 as stated. To the extent Paragraph 112 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue. Defendants further state that a 15-part Plan for Compliance Achievements, purportedly attached as Exhibit 4, speaks for itself, and Defendants deny any attempt by Plaintiff to characterize or interpret same.**

113. The actions laid out in the March 21, 2023, CAP could and should have

been taken by the MDHHS Defendants months before T.M was subjected to inhumane conditions of confinement, including being sexually and physically assaulted.

**ANSWER:** **The allegations in Paragraph 113 are not directed at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 113 as stated. To the extent Paragraph 113 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

114.    The 15-part Plan for Compliance Achievements included:

a. Directing the JDC/Dickerson to begin utilizing day programming, such as Team Wellness day programming;

b. Directing the JDC/ Dickerson to provide the MDHHS with unlimited and ongoing access to the entirety of all youth case files, including all assessments, reports, evaluations, progress notes, etc;

c. Directing the JDC/Dickerson to provide the MDHHS with unlimited and ongoing access to all areas of the facility which house youth on a 24/7 basis. MDHHS staff shall be allowed to possess and use phones and computers while on-site;

d. Directing the Chief Administrator to provide documentation by noon each Monday indicating which days they were present on-site at the facility the preceding week (Saturday-Sunday). This documentation will include a "punch list" of required daily checks completed (to include mattresses/blankets/clean and well-fitting clothes, meals provided, clean rooms, designated showers completed, rec time completed etc. for each youth);

e. Directing the JDC/Dickerson to develop a training plan for all staff to include trauma informed training and restraint training and provided to MDHHS;

f. Requiring the Chief Administrator to attest that the agency is in full compliance with licensing rule R 400.4158(1)(b)(i)(that food cannot be withheld);

76

g. Requiring the JDC/Dickerson to provide a minimum shower 3xweek for all youth. All youth will be provided with appropriate hygiene items as required by rule 400. 4148 including a toothbrush and toothpaste daily;

h. Requiring that the JDC/Dickerson permit recreation time to all youth. Facility will assess any opportunities for outside recreation for small groups (perhaps 3-5);

i. Ensuring youth have recipient rights access and training staff on the process to allow youth access;

j. Establishing a youth advisory council with a small number of youth as members of the council;

k. Requiring that if there are soiled towels, linens, clothing, etc. the JDC will provide clean ones when needed, at minimum once per week. Operations manager and supervisors will ensure this is completed as part of the punch list;

l. Requiring that JDC/Dickerson staff do checks as prescribed in the rules. If a youth floods their cell or there is a water leak, staff clean and sanitize room and document in the log book, and requiring that this item be completed weekly;

m. Requiring that youth who refuse to eat or are viewed to be malnourished receive a dietary consult and follow all recommendations and document. Consultations must be completed with 48-hours of noticing signs of malnutrition;

n. Requiring that in compliance with rule 400.4150 any incident resulting in serious injury of a resident or illness requiring inpatient hospitalization, shall be reported to the parent/ legal guardian, responsible referring agency, and the licensing authority and Chief Administrator as soon as possible, but not more than 24 hours after the incident; and

o. Requiring that if the sheriff's dept. engages with any youth, the facility will notify DCWL, per the rule requirement, "as soon as possible but not more than 24 hours after the incident". Any suspected abuse or neglect will be reported to centralized intake immediately.

**ANSWER:  The allegations in Paragraph 114, including subparagraphs, are**

**not directed solely at Defendants and state legal conclusions to which no answer**

**is required.  To the extent an answer may be required, Defendants deny the**

**allegations in Paragraph 114, including subparagraphs, as stated. To the extent Paragraph 114 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue. Defendants further state that the 15-part Plan for Compliance Achievements speaks for itself.**

115. If Defendants had taken the actions laid out in the March 21, 2023 CAP, the inhumane conditions of confinement that amounted to cruel and unusual punishment and a sexually hostile detention environment for T.M. would not have occurred and would have prevented T.M. from being sexually and physically assaulted.

**ANSWER:   The allegations in Paragraph 115 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 115 as stated. To the extent Paragraph 115 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

116. Defendants had the power and the financial means to implement the above corrective actions long before T.M.'s detention and sexual and physical assaults.

**ANSWER: The allegations in Paragraph 116 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in**

**Paragraph 116 as stated. To the extent Paragraph 116 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

117. Defendants had actual and constructive notice that the conditions of the JDF were such that if these and other actions were not taken, it was substantially certain that a youth in the facility would sustain cruel and unusual conditions of detention, a sexually hostile prison environment would be created, and serious injury, including severe physical and sexual assaults would occur.

**ANSWER: The allegations in Paragraph 117 state a legal conclusion to which no answer is required. To the extent an answer may be required, the allegations in Paragraph 117 are denied as stated. Moreover, to the extent Paragraph 117 alleges Defendants acted unlawfully, Defendants deny the allegations.**

118. As a direct and proximate result of Defendants' actions, T.M. has suffered severe and permanent traumatic physical and psychological damages, including physical injuries to his entire body, including his eye, head, body, ribs, buttocks, and rectum; , and cognitive damage resulting in exacerbation of various diagnosis related to behavioral issues and ADHD; a permanent loss of trust in authority figures and in those who are responsible for protecting his safety and welfare, and; loss in earning capacity.

**ANSWER: The allegations in Paragraph 118 state a legal conclusion to which no answer is required. To the extent an answer may be required, the allegations**

79

in Paragraph 118 are denied as stated.  Moreover, to the extent Paragraph 118

alleges Defendants acted unlawfully, Defendants deny the allegations.

V.

**DEFENDANTS' UNCONSTITUTIONAL CONDUCT**

119.   Plaintiffs incorporate by reference the foregoing paragraphs of this

Complaint as though fully set forth herein.

**ANSWER: Defendants incorporate by reference each and every one of the**

**foregoing answers to the allegations of this Complaint as if fully stated herein.**

120.   Wayne County Policymaker Defendants (Defendants EVANS,

TURFEE, FERNANEZ) violated T.M.'s rights under Fourteenth and Eighth

Amendments by implementing policies that were deliberately indifferent to the

health and welfare of T.M. where there was a significant risk of sexual and other

violence and which would foreseeably lead to Plaintiff being physically and sexually

assaulted. They further created and ratified customs and practices that resulted in the

violation of T.M's constitutional rights. These policies, customs and practices

included but are not limited to:

    a. Confining youths to their rooms for extended periods of time,
depriving them of basic care, including daily showers, recreation
time and vital medication;

    b. Reducing the staff resident ratio to 20 to 1 in violation of PREA;

80

c.  Placing younger residents, including Plaintiff, in confinement with older residents;

d.  Confining youth residents with other residents who have a history of sexual misconduct;

e.  Allowing youth residents to be unsecured and out of their rooms;

f.  Not requiring JDF staff to keep the youth residents within the line of sight;

g.  Not requiring JDF staff to conduct 15 minute round checks;

h.  Not requiring JDF staff to secure vacant rooms;

i.  Not requiring JDF staff to intervene when residents get into physical altercations;

j.  Directing supervision to remain in the Unit Control Room during the shift and not come out onto the floor;

**ANSWER: The allegations in Paragraph 121, including subparagraphs, state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 121, including subparagraphs as stated.**

121.  The Policymaker Defendants are individually liable for the unconstitutional conditions at the JDF and are responsible for establishing the unconstitutional polices that caused the harm to T.M.

81

**ANSWER: The allegations in Paragraph 121 are not solely directed to Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 121 as stated.**

122.   The Wayne County JDF administrators and managers (Defendants ROLAND, BARBE, STEWART, and DOE 1) violated T.M.'s Eighth and Fourteenth Constitutional rights by creating inhumane conditions at the JDF by:

    a.   Their failure to properly oversee the JDF to ensure that T.M. and other youth were being properly cared for and supervised;

    b.   Their failure to enforce rule and regulations that would have prevented inhumane conditions at the JDF and prevented physical and sexual assaults;

    c.   Their ratification and acquiesce to customs and practices, including allowing youth residents to be out of their rooms without supervision, that subjected T.M. to inhumane conditions at the JDF, including physical and sexual assaults

    d.   Placing younger residents, including Plaintiff, in confinement with older residents;

    e.   Confining youth residents with other residents who have a history of sexual misconduct.

82

    f.  Not requiring JDF staff to keep the youth residents within the line of sight;

    g.  Not requiring JDF staff to conduct 15 -minute round checks;

    h.  Not requiring JDF staff to secure vacant rooms;

    i.  Not requiring JDF staff to intervene when residents get into physical altercations;

    j.  Directing supervision to remain in the Unit Control Room during the shift and not come out onto the floor.

**ANSWER**: **To the extent that the allegations in Paragraph 122, including subparagraphs are directed at non-named Defendant DOE 1, Defendants are not required to answer.  To the extent an answer is required as to non-named Defendant DOE 1, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning non-named Defendant DOE 1 and, on that basis, deny these allegations, including subparagraphs, as stated. To the extent the allegations in Paragraph 122, including subparagraphs, are directed to named Defendants, the allegations state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations contained in Paragraph 122, including subparagraphs, as stated.**

123.  MDHSS Policymaker Defendants (Defendants HERTEL, STERLING,

YAGER, and BROTHERSON), by their actions and failure to act and their unconstitutional policies have violated T.M.'s rights under the Eighth and Fourteenth Amendments by, among other things:

   a. Failing to secure residential treatment facilities so that adjudicated youth can obtain the necessary care to complete their sentences and not remain for extended periods of time in the JDF;

   b. Granting the JDF variances allowing the JDF to operate with fewer staff and allowing the JDF to lock up the youth in their rooms facility-wide when there were not enough workers;

   c. Continuing to license the JDF after it repeatedly violated rules and regulations that created inhumane conditions for Plaintiff and others and subjected Plaintiff to physical and sexual violence;

   d. Failing to monitor and oversee the JDF to ensure that it was providing proper care, education, health, and protection to Plaintiff and other JDF youth.

   e. Their actions in licensing the JDF when it repeatedly failed to abide by the basic rules and regulations necessary to provide a safe detention environment for Plaintiff and others;

**ANSWER: To the extent that the allegations in Paragraph 123, including subparagraphs are directed other Defendants, Defendants are not required to**

84

**answer.  To the extent an answer is required as to other Defendants, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny these allegations, including subparagraphs, as stated. To the extent the allegations in Paragraph 122, including subparagraphs, are directed to named Defendants, the allegations state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations contained in Paragraph 122, including subparagraphs, as stated.**

124. Defendants BARR and MALLECK as a MDHHS Consultants by their actions and failure to act violated T.M.'s rights under the Eighth and Fourteenth Amendments by, among other things:

a. Their deliberate indifference in conducting onsite inspections in identifying obvious violations of rules and regulations that would foreseeably lead to inhumane conditions for T.M. and other youth and T.M. being subject to physical and sexual violence;

b. Their deliberate indifference in conducting thorough investigations into violations of rules and regulations that would foreseeably lead to inhumane conditions for T.M. and other youth and T.M. being subject to physical and sexual violence;

c. Their failure to enforce rules and laws such as, among others, those

under the Child Care Organization Act (1973 PA 116).

**ANSWER:  The allegations in Paragraph 124, including subparagraphs, are not directed at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny all of the allegations in Paragraph 124, including subparagraphs, as stated.  Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 124 and, on that basis, deny all of the allegations in Paragraph 124, including subparagraphs.**

125.   Wayne County JDF staff members and supervisors (Defendants STAFF MEMBER 1- 5 and Supervisors 1 and 2 and DOES 1 and 2), violated T.M.'s rights under Eighth and Fourteenth Amendments by, among other things:

    a. Receiving T.M.'s report of being physically threatened by intentionally and recklessly placing him in Unit B with a group that included residents who were related as brothers, at least one resident with a record of criminal sexual conduct, and at least one resident over the age of 18, which the Defendants knew or should have known was dangerous to T.M., who at age 12 was particularly vulnerable to physical and sexual abuse in these circumstances;

    b. After placing T.M. in Unit B, staying in Unit B's Control Room and not coming out onto the Unit to perform 15-minute whereabout

86

checks of the residents;

c.  Not intervening when T.M. was physically assaulted by other youth residents;

d.  Not intervening when youth residents sexually assaulted T.M.;

e.  Failing to keep the residents in their line of vision but instead staying in the Control Room which did not provide a full range of vision for Unit B rooms and the common areas;

f.  Not securing vacant rooms;

g.  Allowing Youth B-F to roam B Unit without proper supervision; and

h.  Shoving T.M. back into Unit B and closing the door to Unit B when T.M. tried to get away.

**ANSWER: The allegations in Paragraph 125, including subparagraphs, are not directed at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny all of the allegations in Paragraph 125, including subparagraphs, as stated.**

126.  Wayne County and MDHSS policymaker Defendants and MDHSS consultants had sufficient knowledge, including through the statutes and regulations established in PREA and through its own internal policies and correctional knowledge, to know that youthful residents, in particular T.M., was at substantial

risk of harm, and failed to adequately protect him.

**ANSWER: The allegations in Paragraph 126 are not solely directed at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny all of the allegations in Paragraph 126 as stated. Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 126 and, on that basis, deny all of the allegations in Paragraph 126.**

127.  Wayne County administrative, management, staff and supervisor Defendants had actual knowledge that T.M. was at high risk, and failed to adequately protect him.

**ANSWER: The allegations in Paragraph 127 state legal conclusions to which no answer is required.  To the extent an answer may be required, the allegations in Paragraph 127 are denied as stated.  Defendants further state that because the allegations in Paragraph 127 fail to identify the individuals it is directed towards, Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations contained in Paragraph 127 and, on that basis also deny these allegations.**

128.  Defendants' unconstitutional policies and practices and customs and practices and their actions and inactions encouraged physical and sexual assaults,

harassment, degrading treatment and privacy violations of the youthful residents, including T.M. by other youthful residents.

**ANSWER: The allegations in Paragraph 128 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 128 as stated.**

129. Defendants unconstitutional policies and practices and customs and practices and actions and inactions deprived T.M. of his constitutional right to bodily integrity and right to privacy without due process of law in violation of the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

**ANSWER: The allegations in Paragraph 129 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 129 as stated.**

130. The deprivation of constitutional rights and the injuries and harm to T.M. alleged in this Complaint are the direct result of official policy, custom and practices of Wayne County and MDHHS Policymakers and administrative and management Defendants.

**ANSWER: The allegations in Paragraph 130 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the**

extent an answer may be required, Defendants deny the allegations in Paragraph 130 as stated.

VI.

### LEGAL CLAIMS

**COUNT I**
**Violation of the Fourteenth Amendment (42 U.S.C. § 1983))**
*(Plaintiff versus All Defendants)*

131. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

**ANSWER: Defendants incorporate by reference each and every one of foregoing answers to the allegations of this Complaint as if fully stated herein.**

132. This case arises out of periods of detention in which T.M. was housed as a pretrial detainee and as a post-adjudication detainee.

**ANSWER: The allegations in Paragraph 132 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 132 as stated.**

133. Under the Fourteenth Amendment, juvenile detention officials are required to provide for the reasonable health and safety of youth in their custody as pretrial detainees.

**ANSWER: The allegations in Paragraph 133 are not directed solely at**

90

**Defendants and state legal conclusions to which no answer is required.  To the**

**extent an answer may be required, Defendants deny the allegations in**

**Paragraph 133 as stated.**

134.   During T.M.'s detention as a pretrial detainee, Defendants violated Plaintiff's due process rights by subjecting him to inhumane conditions of detainment and failing to adequately safeguard his health and safety resulting in T.M. being subjected to deplorable and inhumane detention conditions and physically and sexually assaulted.

**ANSWER: The allegations in Paragraph 134 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 134 as stated. To the extent Paragraph 134 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

135.   As set forth above, Defendants' actions were deliberate, not accidental, and were reckless in the face of an unjustifiably high risk of harm that was either known to Defendants, or so obvious that it should have been known.

**ANSWER: The allegations in Paragraph 135 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 135 as stated. To the extent Paragraph 135 alleges Defendants acted**

**unlawfully, Defendants deny the allegations as untrue.**

136. As set forth above, each of the Defendant officers acted intentionally in a manner that put T.M. at substantial risk of harm, without taking reasonable steps to abate that risk, and by failing to do so caused T.M.'s injuries.

**ANSWER: The allegations in Paragraph 136 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 136 as stated. To the extent Paragraph 136 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

137. The conditions of confinement created and maintained by Defendants put T.M. at substantial risk of serious harm.

**ANSWER: The allegations in Paragraph 137 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 137 as stated. To the extent Paragraph 137 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

138. Reasonable officers in Defendants' position in the circumstances described in this Complaint would have appreciated the high degree of risk involved and the obvious consequences of their intentional conduct of placing T.M. into Unit B under the circumstances presented, and their intentional conduct of ignoring the

beating and abuse of T.M. in Unit B, yet Defendants did not take reasonable available measures to abate that risk.

**ANSWER: The allegations in Paragraph 138 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 138 as stated. To the extent Paragraph 138 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

139.   Defendants caused T.M.'s harms and injuries by not taking reasonable measures to monitor the activities within unit B and to intervene when there were indications that T.M. was being subjected to physical and sexual abuse in Unit B.

**ANSWER: The allegations in Paragraph 139 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 139 as stated. To the extent Paragraph 139 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

140.   The conditions of detainment that Defendants subjected Plaintiff to were unconstitutional and amounted to cruel and unusual punishment, and an express intent to punish on the part of Defendants and /or the conditions of detainment were not rationally related to a legitimate governmental objective and/or were excessive in relation to that purpose.

**ANSWER: The allegations in Paragraph 140 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 140 as stated. To the extent Paragraph 140 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

141.   Defendants violated Plaintiff's constitutional rights.

**ANSWER: The allegations in Paragraph 141 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 141 as stated. To the extent Paragraph 141 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

142.   The constitutional rights that Defendants violated are and were clearly established.

**ANSWER:   The allegations in Paragraph 142 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 142 as stated. To the extent Paragraph 142 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

143.   Accordingly, Defendants, as supervisors, direct participants, and policy makers for Wayne County and the MDHHS, have violated Plaintiff's rights under

94

the Fourteenth Amendment.

**ANSWER: The allegations in Paragraph 143 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 143 as stated. To the extent Paragraph 143 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

## COUNT II
### Violation of the Eight Amendment (42 U.S.C. § 1983)
*(Plaintiff v. All Defendants)*

144. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

**ANSWER: Defendants incorporate by reference each and every one of the foregoing answers to the allegations of this Complaint as if fully stated herein.**

145. The Eighth Amendment to the United States Constitution, as incorporated in and enforced against Defendants through the Fourteenth Amendment as well as through 42 U.S.C. § 1983, provides post-adjudication detainees the right to be free from cruel and unusual punishment.

**ANSWER: The allegations in Paragraph 145 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 145 as stated. To the extent Paragraph 145 alleges Defendants acted**

95

unlawfully, Defendants deny the allegations as untrue.

146. Under the Eighth Amendment, "prison officials have a duty…to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833.

**ANSWER: The allegations in Paragraph 146 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 146 as stated. To the extent Paragraph 146 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

147. This constitutional right was clearly established such that all of the Defendants in this action were on notice that their actions were unconstitutional at the time of the events giving rise to this case. *Id*.

**ANSWER: The allegations in Paragraph 147 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 147 as stated. To the extent Paragraph 147 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

148. In this case, Defendants violated T.M.'s right to be free from cruel and unusual punishment when, as alleged above, they held him under conditions posing a substantial risk of harm.

**ANSWER: The allegations in Paragraph 148 are not directed solely at**

**Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 148 as stated. To the extent Paragraph 148 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

149.   When Defendants received T.M.'s report that he was being physically threatened and responded by placing him into Unit B with residents whom they knew were related as brothers, whom they knew included at least one resident over the age of 18, and whom they knew included at least one person with a history of criminal sexual conduct, they were aware of facts from which the inference could be drawn that a substantial risk of harm existed and they actually drew the inference that a substantial risk of harm existed.

**ANSWER: The allegations in Paragraph 149 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 149 as stated. To the extent Paragraph 149 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

150.   Defendants consciously disregarded those known risks when they placed T.M. in Unit B under the circumstances of this case, failed to lock down the residents inside of Unit B, allowed T.M. to remain inside Unit B when they knew or should have known he was being beaten and sexually assaulted, and when they

97

shoved T.M. back in to Unit B and closed the door when he tried to leave.

**ANSWER: The allegations in Paragraph 150 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 150 as stated. To the extent Paragraph 150 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

151. In addition, in creating, maintaining, and failing to remediate the deplorable conditions alleged in this Complaint, and has determined through the investigations of those conditions by Wayne County, the State of Michigan, and or MDHHS, Defendants were aware of facts from which the inference could be drawn that a substantial risk of harm to residents existed, they actually drew the inference that a substantial risk of harm existed, and they consciously disregarded those known risks.

**ANSWER: The allegations in Paragraph 151 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 151 as stated. To the extent Paragraph 151 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

152. Accordingly, Defendants, as supervisors, direct participants, and policy makers for Wayne County and the MDHHS, have violated Plaintiff's rights under

the Eighth Amendment.

**ANSWER: The allegations in Paragraph 152 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 152 as stated. To the extent Paragraph 152 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

WHEREFORE, the Wayne County Defendants deny Plaintiff is entitled to the relief sought.

## COUNT III
**Failure to Train, Inadequate Policies and/or Procedures, Customs and Practices and Failure to Supervise – Deliberate Indifference**
*(Plaintiff v. all Defendants, except Staff Members 1-5)*

153.   Plaintiff hereby re-alleges each and every allegation contained in paragraphs 1 through of this Complaint as if fully stated herein.

**ANSWER: Defendants incorporate by reference each and every one of the forgoing answers to the allegations of this Complaint as if fully stated herein.**

154.   Pursuant to 42 USC § 1983, as well as the Eighth and Fourteenth Amendments to the United States Constitution, Defendants owed Plaintiff's Next of Friend, T.M., a minor certain duties to properly supervise, monitor and train its detention administrators, managers, supervisors and staff so as to monitor and supervise the detainees so that they would prevent physical and sexual assaults committed on them by other detainees.

99

**ANSWER: The allegations in Paragraph 154 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 154 as stated. To the extent Paragraph 154 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

155.   Defendants have maintained a custom and policy of improper training and supervision of its employees. Defendants are not protected by governmental immunity when following a policy that deprives individuals of their constitutional rights. *Monell v N.Y. City Dep't of Soc. Servs.,* 436 658, 690-91, 692 (1978).

**ANSWER: The allegations in Paragraph 155 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 155 as stated. To the extent Paragraph 155 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue. Defendants further state that they are entitled to governmental immunity.**

156.   Defendants were aware of previous incidents where youthful detainees who were detained at the JDF were physically and sexually assaulted by other detainees.

**ANSWER: The allegations in Paragraph 156 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the**

**extent an answer may be required, Defendants deny the allegations in Paragraph 156 as stated. To the extent Paragraph 156 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

157.  Defendants were aware of the custom and practice of JDF staff members failing to keep youthful detainees within their line of sight, not secured vacant rooms, not intervening when youthful detainees got into physical and sexual altercations, not conducting 15 minute visual checks on the detainees, similar to the actions of Defendants Supervisors 1-3, and Staff Members 1-5.

**ANSWER: The allegations in Paragraph 157 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 157 as stated. To the extent Paragraph 157 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

158. Defendants owed T.M. the following duties and obligations:

    a.  To use due care and caution;

    b.  To adequately and properly create and promulgate guidelines and policies that comply with the requirements of the Eighth and Fourteenth Amendments regarding the detention of youthful detainees and the supervision of detainees.

    c.  To adequately and properly train and supervise JDF detention

employees under their supervision on the proper method of supervising youthful detainees and providing for their safety and medical needs and on effectively controlling detainees who have or are suspected to have psychological or psychiatric problems;

d. To avoid hiring or selecting individuals who it knows or should know are incapable of performing their responsibilities or who are likely to misuse or abuse the power conferred on them as employees of the JDF.

**ANSWER: The allegations in Paragraph 158, including subparagraphs, are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 158, including subparagraphs, as stated. To the extent Paragraph 158 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

159. Defendants breached these duties via its policies, procedures, regulations, customs and/or lack of training and thus exhibited a conscious disregard for the known dangers to youthful detainees, and T.M. specifically, in the following ways, including but not limited to:

a. Defendants' failure to sufficiently staff the JDF with a safe and proper ratio of staff to detainees;

102

b. Defendants' failure to sufficiently staff the JDF with competent medical personnel and mental health professionals;

c. Defendants' failure to monitor their detention staff and medical personnel to ensure that they adequately monitor and supervise detainees who were vulnerable because of their age and serious medical needs;

d. Defendants' failure to have proper policies and procedures, and training to deal with youthful detainees to ensure that JDF personnel conduct timely and adequate rounds and record their observations of the youthful detainees every 15 minutes as required by their own policies and/or procedures;

e. Defendants' failure to have proper policies and procedures in place to deal with JDF overcrowding;

f. Defendants' failure to have proper policies and procedures, and training to deal with youthful detainees who have threatened physical and sexual violence and to ensure that JDF staff personnel can immediately and appropriately respond and take action when a detainee is distress and has been threatened with physical and/or sexual violence.

g. Defendants' failure to fully investigate and discipline its JDF

103

personnel and/or medical/mental health personnel who do not abide by its policies and procedures relative to ensuring the safety of the youthful detainees and providing medical care for serious conditions; and,

h. All other breaches learned through the course of discovery.

**ANSWER: The allegations in Paragraph 159, including subparagraphs, are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 159, including subparagraphs, as stated. To the extent Paragraph 159 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

160. Defendants trained their officials and/or employees and agents in such a reckless and deliberately indifferent manner, that it was inevitable that a youthful detainee would be physically and sexually assaulted by other youthful detainees.

**ANSWER: The allegations in Paragraph 160 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 160 as stated. To the extent Paragraph 160 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

161. Notwithstanding JDF personnel's observation that T.M. was being

104

physically attacked by other detainees, Defendants repeated and acquiesced in the continued practice of not intervening to stop the physical violence placing youthful detainees, such as T.M., in imminent peril of serious physical and psychological injury.

**ANSWER: The allegations in Paragraph 161 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 161 as stated. To the extent Paragraph 161 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

162. The failure of the Defendants to provide training and supervision regarding the prevention of physical and sexual assaults amounts to deliberate indifference to the safety and lives of the detainees of the JDF and particularly T.M.

**ANSWER: The allegations in Paragraph 162 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 162 as stated. To the extent Paragraph 162 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

163. Defendants knew or in the exercise of reasonable care should have known that individual JDF personnel had engaged in misconduct and other violations of the constitutional rights of JDF detainees, more specifically of T.M.

105

**ANSWER:   The allegations in Paragraph 163 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 163 as stated. To the extent Paragraph 163 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

164.   Despite knowledge of its aforesaid pattern and practice, the Defendants failed to properly investigate the improper practices and to supervise and train the JDF personnel.

**ANSWER: The allegations in Paragraph 164 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in Paragraph 164 as stated. To the extent Paragraph 164 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

165.   Defendants developed a "hands off" policy or custom with regard to the omissions of JDF personnel which encouraged JDF personnel to believe they could violate the constitutional rights of T.M. with the explicit or tacit approval of the Defendants herein.

**ANSWER:   The allegations in Paragraph 165 are not directed solely at Defendants and state legal conclusions to which no answer is required.  To the extent an answer may be required, Defendants deny the allegations in**

106

**Paragraph 165 as stated. To the extent Paragraph 165 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

166. As a direct and proximate result of the aforementioned conduct and omissions of Defendants, T.M. has suffered the injuries and damages set forth above.

**ANSWER: The allegations in Paragraph 166 are not directed solely at Defendants and state legal conclusions to which no answer is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 166 as stated. To the extent Paragraph 166 alleges Defendants acted unlawfully, Defendants deny the allegations as untrue.**

WHEREFORE, IT IS RESPECTFULLY demanded that judgment of no cause of action be entered herein, or in the alternative that the said cause be dismissed, with prejudice, and costs and attorney fees awarded to the Defendants.

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

 */s/ Angela L. Baldwin (P81565)*
Melvin Butch Hollowell (P37834)
Kevin F. O'Shea (P40586)
Angela L. Baldwin (P81565)
211 W. Fort St., Suite 705
Detroit, MI 48307
T: 248.920.9074 / F: 248.652.2852
mbh@millerlawpc.com
kfo@millerlawpc.com
alb@millerlawpc.com

107

*Attorneys for Defendants, Wayne County, Warren Evans, Assad Turfe, Melissa Fernandez, Mark Roland, Brandon Barber, Kirpheous Stewart*

Dated:  September 23, 2024

## AFFIRMATIVE AND OTHER DEFENSES

By alleging the defenses set forth below, Defendants do not concede that they have the burden of proof or persuasion with respect to any of these issues.

## FIRST DEFENSE

Defendants deny all allegations not expressly admitted, including but not limited to the allegations in headings and footnotes in the Complaint and in exhibits to the Complaint, and specifically reserves all affirmative or other defenses they may have against Plaintiff.

## SECOND DEFENSE

Defendants specifically reserve all affirmative and other defenses as may become available or appear upon further developments in the case.

## THIRD DEFENSE

Plaintiff's Complaint has failed to state a claim upon which relief may be granted.

## FOURTH DEFENSE

Plaintiff's claims may be barred by governmental immunity, absolute

immunity, qualified immunity and any other immunity granted by law.

## FIFTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by applicable statutes of limitations.

## SIXTH DEFENSE

Plaintiff's claims are barred to the extent that they failed to mitigate their damages.

## SEVENTH DEFENSE

Plaintiff's claims are barred to the extent they were not brought within a reasonable time after they were or should have been discovered and, therefore, may be barred by the doctrine of laches. Defendants have been prejudiced by Plaintiff's delay in bringing stale, tardy claims.

## EIGHTH DEFENSE

Plaintiff's claims are barred to the extent any injury they sustained was caused by their own negligent or intentional conduct and/or the negligent or intentional conduct of third parties and non-parties to this Complaint.

## NINTH DEFENSE

Plaintiff's claims may be barred by the doctrines of unclean hands, waiver, and/or estoppel.

## TENTH DEFENSE

Plaintiff's recovery against Defendants is barred to the extent that there are superseding and/or intervening causes for the damages, if any.

### ELEVENTH DEFENSE

Defendants were not the direct and proximate cause of Plaintiff's alleged injuries, if any.

### TWELFTH DEFENSE

Defendants did not cause and is not liable for any injury claimed by Plaintiff.

### THIRTEENTH DEFENSE

Plaintiff's claims are barred in whole or in part because the Plaintiff has failed to name or join as a party to this suit all persons and/or entities against whom a finding of fault is properly directed.

### FOURTEENTH DEFENSE

At all times complained of, Defendants did not act with malicious intent and acted in good faith and with a reasonable justification or belief in the legality and lawfulness of their actions, and their actions were reasonable considering all of the circumstances.

### FIFTEENTH DEFENSE

Defendants did not cause negligently, intentionally or otherwise Plaintiff to be deprived of any constitutional rights.

### SIXTEENTH DEFENSE

110

Defendant Wayne County is not vicariously liable for the allegedly tortious conduct of its employees which Plaintiff claims resulted in deprivations of federally protected rights.

### SEVENTEENTH DEFENSE

Defendants' policies, practices and customs did not violate any clearly established right protected by the United States Constitution or the Michigan Constitution.

### EIGHTEENTH DEFENSE

Defendants' policies and customs do not demonstrate a deliberate indifference to any federally protected right.

### NINETEENTH DEFENSE

Plaintiff has failed to state a claim pursuant to 42 USC § 1983 by failing to identify any clearly established constitutional rights which were allegedly violated.

### TWENTIETH DEFENSE

At all relevant times Defendants did not act with malicious intent and acted with good faith and with a reasonable justification or belief in the legality and lawfulness of their actions, and the actions were reasonable considering all of the circumstances and Defendants are therefore immune to liability regarding Plaintiff's federal claims.

### TWENTY-FIRST DEFENSE

Plaintiff's claims are barred, in whole or in party, for failure to exhaust administrative remedies.

## TWENTY-SECOND DEFENSE

Plaintiff's losses or damages, if any, may have been caused by his own actions, the actions of other third parties or were the result of unrelated, pre-existing or subsequent conditions that cannot be attributed to Defendants.

## TWENTY-THIRD DEFENSE

Defendants assert that they are determined to be liable, such liability is several only.

## TWENTY-FOURTH DEFENSE

Defendants assert that if determined to be liable, Plaintiff's claims may be barred in whole or in part against Defendants for the reason that the relief requested would constitute an undue hardship and administrative burden upon them.

## TWENTY-FIFTH DEFENSE

Plaintiff's claim is barred in whole or in part for failure to add a necessary party.

## TWENTY-SIXTH DEFENSE

Defendants were not the direct and proximate cause of Plaintiff's alleged injuries, if any.

## TWENTY-SEVENTH DEFENSE

Defendants may prove that there were either efficient, intervening and superseding actions and/or negligence of others unknown to Defendants at this time such that the injuries or damages allegedly suffered may have been caused in whole or in part by the acts or omissions of Plaintiff, other non-parties, and/or other defendants, so the alleged injuries or damages suffered by Plaintiff were not caused by the acts or omissions of Defendants.

## TWENTY-EIGHT DEFENSE

Defendants incorporate by reference any affirmative or other defense raised by any other Defendant in this litigation.

## RESERVATION OF RIGHTS

Defendants reserve the right to raise such additional defenses as may be established during discovery and by the evidence in this case.

## DEMAND FOR COMPULSORY JOINDER OF CLAIMS

Defendants demand Plaintiff join in this action all claims Plaintiff may have against any Defendants arising from the subject matter of this action and which do not require for adjudication the presence of third parties over whom the court cannot exercise jurisdiction.

WHEREFORE, Defendants respectfully demands that judgment of no cause of action be entered herein, or in the alternative that the said cause be dismissed, with prejudice, and costs and attorney fees awarded to the Defendants, that Plaintiff

113

takes nothing; Defendants be awarded its costs, expenses, and reasonable attorneys' fees; and that the Court grant Defendants all further legal and equitable relief it deems just and proper.

## **RELIANCE ON JURY DEMAND**

Defendants hereby state their reliance upon Plaintiff's demand for trial by jury and demand a trial by jury on all claims triable by a jury.

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

 */s/ Angela L. Baldwin (P81565)*
Melvin. Butch Hollowell (P37834)
Kevin F. O'Shea (P40586)
Angela L. Baldwin (P81565)
211 W. Fort St., Suite 705
Detroit, MI  48307
T: 248.920.9074 / F: 248.652.2852
mbh@millerlawpc.com
kfo@millerlawpc.com
alb@millerlawpc.com
*Attorneys for Defendants, Wayne County,*
*Warren Evans, Assad Turfe, Melissa*
*Fernandez, Mark Roland, Brandon Barber,*
*Kirpheous Stewart*

Dated: September 23, 2024

114

## CERTIFICATE OF SERVICE

I certify that on September 23, 2024, the foregoing document was served on all parties or their counsel of record through the Court's CM/ECF system, which will send notification of this filing to all registered users.

                    */s/ Angela L. Baldwin (P81565)*
                    Angela L. Baldwin (P81565)